Hobson *v.* Hobson *et al.*

(*Nashville,* December Term, 1946.)

Opinion filed May 3, 1947.

486

WALKER & HOOKER and K. HARLAN DODSON, JR., all of Nashville, for appellant.

LOUIS LEFTWICH, JR., DENNEY & LEFTWICH and J. B. DANIEL, all of Nashville, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

In 1922 Nick F. Hobson executed a deed of trust purporting to convey to J. B. Daniel, Trustee, an undivided interest recited in the deed as ''being the 1/6 undivided interest of Hobson'' in certain real estate devised by Item IV of the will of his father, N. F. Hobson, this trust deed being executed to secure a substantial debt owed to W. L. Horn. In 1933, the debt remaining unpaid, the trustee foreclosed and the alleged interst of Nick F. Hobson in this land was purported to be conveyed by deed of the trustee to the creditor, Horn, he being the purchaser at such foreclosure proceedings. For the present, it is sufficient to note that Item IV of the will of N. F. Hobson probated in 1901 devised the land in question to his widow, Bettie Hobson, for her life or widowhood. She died in 1940 without ever having remarried, and W. Campbell Hobson, Administrator with the will annexed of her estate, sued and procured a judgment in 1941 of approximately $5280 against the above mentioned Nick F. Hobson for money which Mrs. Bettie Hobson had loaned him in 1919. An execution was returned unsatisfied, there being no property of judgment debtor upon which levy could be made.

As a result of this state of affairs, W. Campbell Hobson, administrator, filed his bill in this cause and insisted that under a proper construction of the will of Nick F. Hobson, the deed of trust from Nick F. Hobson to Daniel,

Trustee, and the deed from Daniel, Trustee, to the purchaser, W. L. Horn, were nullities in that Nick F. Hobson under Item IV of his father's will owned no interest in the land therein devised until his survival in 1940 of the life tenant, Mrs. Hobson, and that it was by reason of such survival that for the first time Nick F. Hobson became the owner of the 1/6 interest purported to be conveyed by the aforesaid deed of trust and deed. The relief sought by the bill is that these two deeds be declared clouds upon the title of Nick F. Hobson in said one-sixth undivided interest and removed as such and that then this interest be sold and the proceeds of sale applied to the payment of the judgment which complainant, administrator, had obtained against Nick F. Hobson. All parties in interest are before the Court and the successors in title of Horn who purchased at the foreclosure sale assert the validity of the deed of trust and the deed, their insistence being that by Item IV of the will mentioned Nick F. Hobson was vested with a one-sixth undivided remainder interest in the land described in the deeds at the time of his conveyance thereof by the trust deed mentioned, it being their insistence that the will devised him a vested remainder in an undivided one-sixth interest in this land.

The issue thus made requires at the outset a construction of the will of N. F. Hobson. By various items thereof, other than Item IV, the testator gave his wife certain property absolutely and identified by name six of his children, and devised them specifically and in fee simple certain property. There is nothing in this will which states expressly or by necessary implication that the six children mentioned are all of the children of the testator, though this is a fact. These provisions of the will are of no importance in this case since they are of no aid in the

construction of the controverted provision of Item IV reading as follows:

"I give and devise to my said wife, for and during her natural life or widowhood, three tracts of land as follows . . . (described land). At her death the same shall be divided between my children then living, and if any of them shall have died leaving a child or children living at her death, then such child or children shall take the parent's share."

It is insisted by the complainant, administrator, that this devise comes within the class doctrine and that, therefore, Nick F. Hobson owned no transmissible interest in this land at the time he executed the deed of trust, and that he owned no interest in said land until the death of the life tenant in 1940, it being his insistence that the remainder interests were contingent as to persons until the death of the life tenant. On the other hand, the successors in title of Horn, purchaser at the foreclosure proceedings, contend that the class doctrine does not apply and that the remainders created by this devise were vested remainders transmissible by deed, and, therefore, that the trust deed from Nick F. Hobson to Daniel, Trustee, and the deed from Daniel, Trustee, to Horn are valid, and that the latter deed, accordingly, vested in Horn a one-sixth undivided remainder interest in the land described in the deed of trust.

The Chancellor under the authority of *Malone* v. *Mc-Gruder*, 8 Higgins 526, held that the class doctrine did not apply and that by the above quoted provision of Item IV of the will of Nick F. Hobson acquired upon the death of his father a vested remainder. The Chancellor dismissed the bill and complainant, administrator, has appealed, and here insists that the class doctrine does apply. This

appellant will continue herein to be referred to as complainant.

■ *Satterfield* v. *Mayes*, 30 Tenn., 58, is recognized as the leading authority in this state upon the rule known as the class doctrine. *Sanders* v. *Byrom*, 112 Tenn. 472, 477, 79 S. W. 1028. In *Satterfield* v. *Mayes* the rule is thus stated:

"Where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment or distribution of the fund is fixed at a subsequent period; or on the happening of a future event, the entire interest vests in such persons only as at that time fall within the description of persons constituting such class."

■ We think every feature of the above quoted rule is plainly reflected in that provision of Item IV of the will now under consideration. The land is to be divided on the happening of a future event, to-wit, the death of the life tenant. It is to be divided at that time between only the children of the testator living at that time and the children of any predeceased child living at that time, such children to take the share which their parent would have taken had he been living at the time of the death of the life tenant. One or more children of the testator who were living at the time of the testator's death may die before the life tenant or they may each have one or more children born after the death of the testator and before the death of the life tenant and then they or their children may die before the life tenant. These are obvious truths from which it necessarily follows that the devise in question is made to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or deaths before the death of the

life tenant, and such as do die before the death of the life tenant take no interest in the remainder. We are unable to place any other construction upon the language used in this provision of the will.

In the case of *Sanders* v. *Byrom*, 112 Tenn. 492, 79 S. W. 1028, 1030 this Court said:

"As to the fixing of a period, many of the cases do so by use of such expressions as 'then living', referring to some event; as, for example, the death of the life tenant."

The observation of this Court in *Fulkerson* v. *Bullard* 35 Tenn. 260, 263, is appropriate to the language of the will in the instant case. There the Court said:

"Had the testator intended that the legacy should vest in such of his children as might be living at the time of his death, why insert this last-clause, 'If any of my children should die before the time aforesaid leaving lawful child-ren, said last mentioned children shall take the shares of their parents in said negroes?'"

In *Bigley* v. *Watson*, 98 Tenn. 353, 358, 39 S. W. 525, 526, 38 L. R. A. 679, the Court held:

"That part of the decree which adjudged that the lands allotted to Mrs. Watson should pass 'at her death to her children then living, and the issue of such as may be dead,' created a valid contingent remainder in fee. . . . it was contingent, rather than vested, because limited to take effect in 'dubious and uncertain' persons."

In *Deadrick* v. *Armour*, 29 Tenn. 588, at page 600, the Court held:

"In further construing the will of David Dunn, it will be observed that he gives all his estate, both real and personal, not otherwise disposed of, to his daughter, said Eliza G., for life, and, 'at her death the said property to be equally divided among all her children, then living;' as well the children she then had as those she might have

of a future marriage. The words 'then living,' or living at her death, indicate distinctly the children entitled. The children who died before the mother have no interest in the remainder, but it will be 'equally divided among all her children' living at her death.''

One of the appropriate late cases of this Court is that of *Rinks* v. *Gordon*, 160 Tenn. 345, 24 S. W. (2d) 896. In that case the will devised an estate for life to a sister and ''at her death shall be equally divided between'' four brothers and sisters (whose names were called) ''share and share alike to them or to their heirs who may be living at the time of my sister Carrie T. Webster's (life tenant) death.'' This Court held:

''By this language the testatrix obviously contemplated that only persons living at the death of the life tenant would share in the division of the remainder estate, and intended that the determination of the persons by whom the remainder estate should be enjoyed would be made as of that date.''

██ ██ It is true that the law favors the vesting of estates at the earliest moment not inconsistent with the plain provisions of the will. Pursuant to this established rule of public policy, the Courts will eagerly look for some provision or expression in the will which will reasonably justify a decision that the class doctrine does not apply to the particular will it may be construing. However, we are unable to find any such provision or expression in the will of Mr. Hobson. In behalf of the defendants, they being the appellees here, it is insisted that the mention by the testator of all six of his children in various parts of his will as objects of his bounty is in fact sufficient under the authority of *Malone* v. *McGruder*, 8 Higgins, 526, to hold that the children of the testator living at the time of his death took at that time a vested remainder:

492

In the *Malone case* the will affirmatively recites that all the children of the testator were being provided for by the will. In the instant case, the will does not affirmatively so recite, although in fact all the children of the testator are provided for in various other parts of the will. This may not be a very material distinction between the instant case and the *Malone* v. *McGruder case.* However, we think that the decision in *Malone* ·v. *McGruder* must be confined strictly to the facts of that case upon which there was a concurrent finding by the Chancellor and the Court of Appeals. It has not since been referred to as authority with reference to the class doctrine. It was not followed by this Court in the *Rinks* v. *Gordon case, supra,* wherein the will therein specifically pointed out by name each remainder brother and sister who should take ''share and share alike to them or their heirs, who may be living at the time of my sister Carrie T. Webster's death.'' We think the instant case is controlled by the holding in Rinks v. Gordon and that line of similar cases, some of which have been referred to. We must, therefore, hold that the testator Hobson intended by the language used in the above quoted provision of Item IV of his will that only those of his children living at time of the death of the life tenant and only to the then living children of a child of testator's who had predeceased the life tenant should share in the division which was to be had upon the death of the life tenant, and that the ascertaining of these persons was to be made at the time of the death of this life tenant. It follows that during the life tenancy the devise of this land was to ''the described class, as a class, and not individually in the persons comprising such class, and the entire subject of the gift survives to and vests in the persons constituting such class at the period when payment or distribution of the fund

is to be made." *Nichols* v. *Guthrie,* 109 Tenn. 535, 539, 73 S. W. 107, 108. This remainder was, then, contingent as to persons since the persons who were to take could only be ascertained at the time the preceding estate fails. A remainder contingent as to the person "is not an estate, but a mere chance of having one . . . a pure expectancy." *Nichols* v. *Guthrie, supra,* 109 Tenn. at pages 540, 541, 73 S. W. 109. Therefore, at the time Nick. F. Hobson executed the deed of trust his interest was a pure expectancy which could not be conveyed at common law except by way of estoppel, *Nichols* v. *Guthrie, supra,* and his deed of trust was, therefore, in law ineffective at that time to convey the one-sixth undivided remainder interest which it purported to convey.

▉▉ The defendants next insist that when grantor Hobson did become vested with title to this one-sixth undivided interest in 1940 by reason of the falling in of the life estate this subsequently acquired title vested by estoppel in the defendants who were successors in title to Horn, the grantee, from Daniel, Trustee. This deed of trust executed by Nick F. Hobson in 1922 did not contain a warranty of title, though it did recite that the interest being conveyed was "the 1/6 undivided interest of Hobson . . . under the will of N. F. Hobson, deceased." The complainant insists that this doctrine of estoppel with reference to a subsequently acquired title does not apply where the deed does not contain a warranty. This may be true in a Court of law but it is immaterial in this case which was instituted in a Court of equity, wherein under the doctrine of equitable assignment of property to be acquired in the future the instrument of conveyance will be treated as the contract of an expectant and enforced whenever the property covered by it comes into possession. In the case of *Taylor* v. *Swafford,* 122 Tenn. 303,

494

308, 123 S. W. 350, 351, 25 L. R. A. (N. S.) 442, this Court held:

"But, independent of the rule of estoppel, both in English and American courts of equity, where it is found that the contract of an expectant has been fairly made and upon a valuable consideration, it will be enforced, as against the grantor and his privies, whenever the property covered by it comes into possession. This is done, however, by these courts, not upon the ground that the grant is one of a present interest, but rather upon that stated by *Gibson, C. J.,* in *Chew* v. *Barnet,* 11 Serg. & R. (Pa.), 389, to wit: 'That a conveyance before the grantor has acquired the title, operates as an agreement to convey, which may be enforced in chancery between the parties and against purchasers with notice'."

This holding of *Taylor* v. *Swafford* is approvingly cited in subsequent cases in this Court. See *Scruggs* v. *Mayberry,* 135 Tenn. 586, at page 607, 188 S W. 207; *Tate* v. *Greenlee,* 141 Tenn. 103, 111, 207 S. W. 716. This Court held to like effect in the case of *Steele et al.* v. *Frierson et al.,* 85 Tenn. 430, 3 S. W. 649. In that case the deed of conveyance did "bargain, sell, transfer, and convey unto Albert Frierson . . . all my interest in the estate of my father . . . of every kind and character whatever, in real, personal, and mixed property." Page 431 of 85 Tenn., page 650 of 3 S. W. The consideration was the large indebtedness of the grantor to the grantee. The father of the grantor was then living and the grantor owned no interest at that time in the estate of his father other than the natural expectancy that he would be devised a share thereof.

After the death of the father this instrument was attacked as being void. The Court held to the contrary, saying:

"This assignment of his expectancy was voluntarily made, as the only means by which any part of this large and meritorious debt could be paid. Is such an assignment of the expectancy of an heir void as matter of law? Whatever may be the rule at law concerning the validity of the assignment of an interest or right not in ex-istence, there can be no doubt that courts of equity will give effect to such assignments, fairly made, in behalf of innocent purchasers." Page 433 of 85 Tenn., page 650 of 3 S. W.

The ground upon which this decision was predicated is stated thus by this Court.

" 'The doctrine of equitable assignment of property to be acquired in future is much broader than the jurisdiction to compel the specific performance of contracts. In truth, although a sale or mortgage of property to be ac-quired in future does not operate as an immediate aliena-tion at law, it operates as an equitable assignment of the present possibility, which changes into an assignment of the equitable ownership as soon as the property is ac-quired by the vendor or mortgagor; and because this ownership, thus transferred to the assignee, is equitable, and not legal, the jurisdiction by which the right of the assignee is enforced, and is turned into a legal property accompanied by the possession, must be exclusively equit-able. A court of law has no jurisdiction to enforce a right which is purely equitable.' Pom. Eq. sec. 1288.

"Again he says that legislation recognizing as legal such assignments out of the way, 'that according to the general course of decision (such rights) are assignable in equity for a valuable consideration; and equity will en-force the assignment when the possibility has changed into a vested interest or possession.' Idem., sec 1287.

"Even at law the sale of an interest in the lands of an

ancestor living has been enforced, but generally by aid of the operation of the doctrine of estoppel springing from the covenants in the deed. The argument that the assignment now under discussion contains no covenants might be effective in a court of law; but, regardless of the doctrine of estoppel, such an assignment or sale is operative in equity as an equitable assignment of a future interest, and, upon the expectancy being converted into a vested interest, will be enforced by courts of equity.'' Page 434 of 85 Tenn., page 651 of 3 S. W.

It must be kept in mind that the complainant to this bill filed in a Court of equity seeks to maintain the bill only in his capacity as judgment creditor of the original grantor, Nick F. Hobson. His standing in this case can be no stronger than if the grantor, Nick F. Hobson, himself had filed this bill, in which the fundamental prayer is that the deed of trust from Nick F. Hobson to J. B. Daniel, Trustee, be declared void as a cloud upon the title of Nick F. Hobson and removed as such. Under the holding in *Taylor* v. *Swafford* and *Steele* v. *Frierson,* Nick F. Hobson as complainant in a court of equity would not be entitled to the relief prayed. It follows that his judgment creditor is likewise not so entitled.

The Chancellor dismissed the bill of this complainant on a different ground, but this Court being of the opinion that he reached the correct result his decree dismissing the bill is affirmed. *Chambers v. Chambers,* 92 Tenn. 707-714, 23 S. W. 67 ; *Sheafer* v. *Mitchell,* 109 Tenn. 181, 194, 71 S. W. 86.

The costs of the appeal are taxed against the appellant and the sureties on his bond.

All Justices concur.