Mrs. Emma Walker et al., Appellees,

*v.*

Royce Marcus Applebury and Mrs. C. M. Applebury, Appellants.

400 S.W.2d 865.

(*Jackson,* April Term, 1965.)

Opinion filed December 31, 1965.

Petition for Rehearing Denied April 6, 1966.

THOMAS F. TURLEY, JR., Memphis, for appellees.

CLYDE P. WEST, Memphis, for appellants.

MR. JUSTICE DYER delivered the opinion of the Court.

This case requires us to determine whether certain devises in the will of Lena Feezor, deceased are controlled by the "Tennessee Class Doctrine" enunciated in *Satterfield v. Mayes*, 30 Tenn. 58 (1849). This will is as follows:

Feb. 28, 1935 8 P.M.

*The Smith Newton place, except what I want Will Gay to have I will to my husband Barney Feezor his life time and at his death back to the Applebury's, but at*

*any time he becomes neglent in keeping it in repair and willfully let any of the buildings decay & fall I want it sold to the highest bidder and the proceeds to go to the Applebury kin* The place that belonged to Mrs. Ella Applebury to my husband also as long as he keeps it in repair at his death to Lizzie Stubblefield & Clarence Gregory to be kept together undivided/rented by a guardian, and the rents or proceeds there of to be equally divided until the death of one and then to go to the other one.

The Norris place to be rented together and the proceeds to go ½ to Camp Ground Church as long as it remains a church the other half proceeds to Flat Woods Church as long as it remains a church should either church last longer than the other to the one that last the longest if both cease to be equally divided with my Mama & Papa nephews & nieces. The Tonnie Lumpkins place to and the house where Will Gay lives and land off the Newton place on the west side of the road to him his life time at his death to Barney Feezor *the shelby Co. place to Barney Freezor his life time then to the Appleberry heirs* one thousand dollars of what money I leave to be deposited in some bank and the interest to go the upkeep of the cemetary lot at Munford. should I have any more money Barney have the interest to use only unless he becomes and invalid and needs the principal and if any left to go the Murphy & Applebury Heirs.

Feb. 28, 1935 8 P.M.

/s/Lena Feezor

The above clauses of the will, italicized in this opinion, are the clauses at issue. There is no issue in regard to the

requirements made on the life tenant, Barney Feezor, that he keep the property in good repair.

The facts necessary to note are: The Testatrix was a member of the Applebury family and the land devised, by the above shown clauses of her will, had come to her as an inheritance through the Applebury family. Upon Testatrix's death in 1950 she was survived by her husband, Barney Feezor, and a number of Applebury kin, among them, a nephew, Marvin Applebury. Marvin Applebury was married to Mrs. C. M. Applebury, one of the Appellants, and in 1916 they adopted a son, Royce Marcus Applebury, the other Appellant. Marvin Applebury died in 1955 prior to the death of Barney Freezor in 1958.

The Chancellor found the "class doctrine" applied to the above clauses of this will and the remainder insterest, after the life estate devised, would not vest until the death of the life tenant (Barney Feezor). Since Marvin Applebury died during the lifetime of the life tenant he took no vested interest in this land and the Appellants, his adopted son and widow, had no interest therein. The Court of Appeals has affirmed the action of the Chancellor and the clause is here by petition for certiorari.

The class doctrine has long troubled both the bench and bar of Tennessee, and there is an excellent article on this doctrine in 22 Tennessee Law Review 943 (1953). This court in the very recent case of *Moulton v. Dawson*, 215 Tenn. 184, 384 S.W.2d 233 (1964) dealt with this doctrine although the statements made therein, on the point at issue *sub judice*, would be dictum. This doctrine contrary to the common law and the great weight of authority, is generally accepted as being established in 1849 by the

case of *Satterfield v. Mayes,* 30 Tenn. 58 (1849). The doctrine is stated as follows:

> Where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment or distribution of the fund is fixed at a subsequent period, or on the happening of a future event, the entire interest vests in such persons only as at that time fall within the description of persons constituting such class. *Satterfield v. Mayes,* 30 Tenn. 58, 59; *Burdick v. Gilpin,* 205 Tenn. 94, 105, 325 S.W.2d 547, 552.

*Satterfield v. Mayes,* supra has been followed by a long line of cases among which cases are *Forrest v. Porch,* 100 Tenn. 391, 45 S.W. 676 (1898); *Nichols v. Guthrie,* 109 Tenn. 535, 73 S.W. 107 (1902); *Sanders v. Byrom,* 112 Tenn. 472, 79 S.W. 1028 (1903); *Tate v. Tate,* 126 Tenn. 169, 148 S.W. 1042 (1912); *Jennings v. Jennings,* 165 Tenn. 295, 54 S.W.2d 961 (1932); *Hobson v. Hobson,* 184 Tenn. 484, 201 S.W.2d 659 (1947); *Felts v. Felts,* 188 Tenn. 404, 219 S.W.2d 903 (1949); *Denison v. Jowers,* 192 Tenn. 356, 241 S.W.2d 427 (1951); and *Burdick v. Gilpin,* 205 Tenn. 94, 325 S.W.2d 547 (1959).

About the same time the class doctrine was born there was another line of cases which advocated the doctrine of seizing slight grounds for refusing to apply the rule. The reason for this was that the rule often operated to defeat the intention of the testator. This line of cases is headed by *Bridgewater v. Gordon,* 34 Tenn. 5 (1854). See also, *Puryear v. Edmondson,* 51 Tenn. 43 (1871); *Balch v. Johnson,* 106 Tenn. 249, 61 S.W. 289 (1900); *Smith v.*

*Smith,* 108 Tenn. 21, 64 S.W. 483 (1901); *Keeling v. Keeling,* 185 Tenn. 134, 203 S.W.2d 601 (1947).

Chapter 13 of the Public Acts of 1927 became effective on 21 March 1927. This statute is now carried in the Tennessee Code as T.C.A. sec. 32-305. This code section and caption of the original act are as follows:

A BILL to be entitled ''An Act to so change what is known as 'The Class Doctrine' concerning property to be paid or distributed or divided among members of a fluctuating class at a future time or upon the happening of a future event, that the issue of any member of such class dying before such future time or the happening of such future event, shall take the share which the member of the class dying would take if living at such future time or at the happening of such future event.''

Where a bequest, devise, conveyance, transfer or gift is made to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment, distribution, vestiture or enjoyment is fixed at a subsequent period or on the happening of a future event, and any member of such class shall die before the arrival of such period or the happening of such event, and shall have issue surviving when such period arrives or such event happens, such issue shall take the share of the property which the member so dying would take if living, unless a clear intention to the contrary is manifested by the will, deed or other instrument. Chapter 13, Public Acts of 1927.

██ The caption of this 1927 Act may be examined, along with the body of the Act, to assist the Court in the

interpretation of the Act. *Hutchinson v. Montgomery,* 172 Tenn. 375, 112 S.W.2d 827 (1937). An examination of the body of this Act in conjunction with the Caption can lead to no other conclusion other than the legislature, by this Act, intended to make some changes in this "class doctrine". Just what changes the statute made is a decision for the courts. Soon after the passage of this 1927 Act it was held to operate prospectively. That is it would operate only upon a bequest, devise, conveyance and etc. made after the effective date of the Act. *Jennings v. Jennings,* 165 Tenn. 295, 54 S.W.2d 961 (1932). As a result of the passage of this 1927 Act there were a number of comments. Among them the following:

> It is now the settled law of Tennessee that the rule of construction known as the "Class Doctrine," does not apply to deeds made or wills of persons dying subsequent to the date of the passage of said Act, unless it affirmatively appears in the deed or will that the grantor or testator, as the case may be, manifestly intended to cut off the issue or lineal descendants of the members of the class, dying prior to the date of distribution of the property.

> Chambers, History of the Class Doctrine in Tennessee, 12 Tenn.L.Rev. 115 (1934).

> This statute abolishes the Tennessee Class Doctrine and a gift to a class may be vested as any of the members are ascertained.

> Warner, The Rule Against Perpetuities, 21 Tenn.L. Rev. 641 (1951).

> Apparently the rule that had harried the legal profession ever since *Satterfield v. Mayes* was now to be forgotten.

McSween, The Tennessee Class Doctrine: A Spectre at the Bar, 22 Tenn.L.Rev. 943 (1953).

By statute enacted on that date, it would appear that the Tennessee rule, as to interest created after that time, is now the same as that in force in other jurisdictions. Simes: Law of Future Interests, sec. 76.

The mid-nineteenth century case of *Satterfield v. Mayes* reflects the lack of understanding concerning the principles of construction involved in gifts to classes. The ''Tennessee Class Doctrine'' spawned by this precedent has become somewhat unique in Anglo-American Law. In 1927 the legislature clearly intended to abolish this misconceived and inconsistent ''Tennessee Class Doctrine,'' and to establish the rules of judicial construction generally applicable in Tennessee and in other common law jurisdictions. Nothing could be more clear than the legislative intention to abolish the sporadic and ill-conceived doctrine.

Trautman, Decedents, Estates, Trusts and Future Interest—1959 Tennessee Survey, 12 Vand.L.Rev. 1157, 1175 (1959).

The case of *Harris v. France,* 33 Tenn.App. 333, 232 S.W.2d 64 was decided by the Western Section of the Court of Appeals on 16 March 1950. Certiorari was denied by this Court on 15 July 1950. This case involved a will probated in 1946 and the Court, speaking through the late Presiding Judge Anderson, in regard to this 1927 Act said:

\* \* \* by virtue of the statute, where applicable, the rule now is that notwithstanding that the time of payment or distribution of the estate is fixed at a subsequent

period, or upon the happening of a future event, the individual members of the class will take vested transmissible interest unless the will, considered as a whole in the light of all the circumstances, manifest a clear intention to the contrary. 33 Tenn.App. 347, 232 S.W.2d 70.

The case of *Denison v. Jowers*, 192 Tenn. 356, 241 S.W.2d 427 was decided by this Court on 16 June 1951. This case involved a will probated in 1935 and this Court said:

By the passage of Chapter 13 of the Public Acts of 1927, * * * the Legislature did no more than enact a rule which this Court had eagerly followed without the legislation. * * *

The rule of the class doctrine, as it affects the transmissibility of the interest of W. C. Council in the present case, is a minority rule, and is contrary to the common law, * * * nevertheless, the rule as we have applied it is so firmly established in our decisions, that this Court must abide by it under the doctrine of stare decisis until it is changed by the Legislature.

192 Tenn. 360, 240 S.W.2d 428.

As a result of *Denison v. Jowers,* supra there were many comments, among them the following:

The statute (1927 Act) was referred to, but was found to do "no more than enact a rule which this Court had eagerly followed without the legislation." It seems regrettable that so narrow a meaning was given to the legislation which might have been used as a basis for abandoning a rule which frequently frustrates the in-

tention of the testator, and which is uniformly rejected elsewhere.

Vol. 1, Simes and Smith, The Law of Future Interest, 2d 3d. 1956, Section 146, Page 150

Certainly the closing words of the court in *Denison v. Jowers,* that the rule of the Class Doctrine is a minority rule, and is contrary to the common law, but nevertheless, has been applied and is "so firmly established in our decisions, that this Court must abide by it under the doctrine of stare decisis until it is changed by the Legislature," may lead us to conclude that the Tennessee Class Doctrine, long legally dead, has been disinterred.

McSween, The Tennessee Class Doctrine: A Spectre at the Bar, 22 Tenn.L.Rev. 943 (1953).

* * * in *Denison v. Jowers,* the Supreme Court, speaking through the late Mr. Justice Gailor, applied with reverence the old "rule from *Satterfield v. Mayes,*" apparently unaware of the purpose of the legislature in passing the 1927 statute. Trautman, Decedents' Estates, Trusts and Future Interests — 1959 Tennessee Survey, 12 Vand.L.Rev. 1157, 1177 (1959).

The case *Karsch v. Atkins,* 203 Tenn. 350, 313 S.W.2d 253 was decided by this court on 9 April 1958. This case involved a gift, by trust agreement, dated 1 July 1942. This Court speaking through Mr. Justice Burnett, now Chief Justice Burnett, said:

By virtue of Section 32-305, T.C.A., where applicable, the rule now is that notwithstanding that the time of payment or distribution of the estate is fixed at a subsequent period, or upon the happening of a future

event, the individual members of the class will take vested transmissible interest unless the will, considered as a whole in the light of all the circumstances, manifests a clear intention to the contrary. * * *

This statute contains in its concluding sentence a recognition that a remainder to a class can be construed as contingent. It seems to us though from the language of this statute that an intention to make the remainder contingent must be more or less expressly stated. As we see it the rule should be, in view of this statute, that the estate will be treated as vested unless the contrary is expressly provided for in the will. This is what the statute says—and we must apply it as it reads. 203 Tenn. 354, 313 S.W.2d 255.

The issue *sub judice* is whether the remainder interest in the land devised by the will vested in the class (Applebury kin) at the death of the Testatrix; or whether the remainder was contingent during the life of the life tenant (Barney Feezor) to vest in the class upon the death of the life tenant.

This will, probated in 1950, is subject to the terms of the 1927 Act (T.C.A. sec. 32-305). Such being the case the issue will be decided by applying the following rule. That the class took a vested transmissible interest in this estate in remainder upon the death of the Testatrix unless, (1) the will taken as a whole, in the light of all the circumstances, requires the remainder to remain contingent, and not vest during the life of the life tenant, in order to carry out the clear intention of the Testatrix, or (2) there is language in the will expressly providing the remainder not vest during the life of the life tenant.

■ It is apparent, insofar as the land here at issue is concerned, Testatrix had two thoughts in mind. First, she wanted to look after her husband so long as he lived and in doing so gave him a life estate in this land. Second, she wanted the land to go back, from whence it came, to the Applebury family. The particular language in regard to the second thought is "back to the Applebury's", "to go to the Applebury kin" and "to the Applebury heirs." In order to carry out this clear intention it is not required this remainder interest remain contingent during the life of the life tenant. There is no language in this will expressly providing this remainder be contingent during the life of the life tenant.

It results upon the death of the Testatrix, Marvin Applebury, a nephew of the Testatrix and a member of the Applebury family, took a vested transmissible interest in remainder in the land. The amount he would have taken is not in dispute. The judgment of the Court of Appeals is reversed. Since the land has been sold and this suit has been over division of the proceeds we remand same to the Chancery Court of Tipton County for all necessary proceedings not inconsistent with this opinion.

## On Petition to Rehear

In a forthright, strong and sometime testy petition to rehear, counsel for Appellees has stated that if our original opinion is not changed it will tarnish the luster of the Court, as an institution, and will be detrimental to its individual members. We are first challenged because we refer to Marvin Applebury as a nephew of the testatrix. This was an inadvertence, since Mr. Applebury was a first cousin and, therefore, was not a nephew. The degree of kinship in this case is wholly immaterial but, as indicated, we acknowledge this error.

Appellees allege T.C.A. sec. 32-305 is not a substitute for adoption statutes which have been passed in other states such as North Carolina. This of course is true but immaterial. In our original opinion we held Marvin Applebury, an heir by blood and not adoption of the testatrix, upon the death of the testatrix took a vested remainder interest in the lands mentioned in the will. Royce Marcus Applebury an adoptive son of Marvin Applebury, by virtue of T.C.A. sec. 36-126, would inherit from his adoptive father and not the testatrix.

Appellees insist the Court is bound to the holding in *Denison v. Jowers,* 192 Tenn. 356, 241 S.W.2d 427 (1951) and similar cases since 1927 by the doctrine of stare decisis, and that the rule laid down in *Satterfield v. Mayes,* 30 Tenn. 58 (1849) has been consistently followed from that date down to and including 1959. The cases cited are: *Forrest v. Porch,* 100 Tenn. 391, 45 S.W. 676 (1898); *Nichols v. Guthrie,* 109 Tenn. 535, 73 S.W. 107 (1902); *Sanders v. Byrom,* 112 Tenn. 472, 79 S.W. 1028 (1903); *Tate v. Tate,* 126 Tenn. 169, 148 S.W. 1042 (1912); *Rinks v. Gordon,* 160 Tenn. 345, 24 S.W.2d 896 (1930); *Jennings v. Jennings,* 165 Tenn. 295, 54 S.W.2d 961 (1932); *Hobson v. Hobson,* 184 Tenn. 484, 201 S.W.2d 659 (1947); *Felts v. Felts,* 188 Tenn. 404, 219 S.W.2d 903 (1949); *Denison v. Jowers,* 192 Tenn. 356, 241 S.W.2d 427 (1951); and *Burdick v. Gilpin,* 205 Tenn. 94, 325 S.W.2d 547 (1959). In our original opinion we did not individually take up these cases on this issue of the class doctrine, and the effect, if any, of Chapter 13, Public Acts of 1927 upon said doctrine.

The first four cases cited will be of no help since they were decided prior to the passage of this 1927 Act.

In *Rinks v. Gordon,* supra (1930), the will stated: "share and share alike to them or their heirs, who may be living at the time of my sister Carrie T. Webster's death." This makes survival of the life tenant a contingency but more important is the fact the will was probated in 1885 many years prior to the 1927 act.

In *Jennings v. Jennings,* supra (1932) a clause in the will provided:

My said son Royal S. Jennings shall take said lands at the death of my wife Zylpha, or upon her second marriage, and not before, and to hold the same for and during his natural life and at his death to his sons.

The Court held the above language in the *Jennings* case brought the devise plainly within the Tennessee Class doctrine and stated:

The Court of Appeals expressed the opinion that the class doctrine would be applicable but for chapter 13 of the Acts of 1927, carried into the Code at section 7598. * * * We do not agree to this conclusion of the Court of Appeals. The act of 1927 undertook to deal with cases "where a bequest, devise, conveyance, transfer or gift is made," etc., etc. The act did not undertake to deal with any case where a bequest, devise, conveyance, etc., had already been made. *The statute is clearly prospective in its operation.* (emphasis supplied).

*Hobson v. Hobson,* supra (1947) dealt with a will probated in 1901. Since the 1927 Act is prospective in application it would not be at issue in the *Hobson* case. This is also true of *Felts v. Felts,* supra (1949) since it dealt with a will probated in 1919.

The case of *Denison v. Jowers,* supra (1951) is the rock upon which Appellees base their petition to rehear. The will in this case was probated in 1935 and the Court said:

By the passage of Chapter 13 of the Public Acts of 1927, which is now Code sec. 7598, the Legislature did no more than enact a rule which this Court had eagerly followed without the legislation.

The last case cited is *Burdick v. Gilpin,* supra (1959). The will in this case was probated in 1907 and the opinion does not refer to this 1927 Act.

The cases since the Act of 1927 have been looked at and discussed. In only one instance was the will probated after 1927 and that was the case of *Denison v. Jowers,* supra. In that case the court states why a contingent remainder is created and then goes one step further to say that the statute did not do anything. T.C.A. sec. 32-305 recognizes, of course, that a testator may expressly create a contingent remainder by appropriate words. Since 1927 we have these important cases: *Jennings v. Jennings,* supra, stating that the statute is prospective; *Denison v. Jowers,* supra, stating that the statute did not change anything; *Karsch v. Atkins,* 203 Tenn. 350, 313 S.W.2d 253 (1958), a tax case which held the statute was applicable and vested transmissible interests were created; and *Moulton v. Dawson,* 215 Tenn. 184, 384 S.W.2d 233 (1964), holding, by dictum, that the legislature did what it said it was going to do in 1927 and changed the class doctrine. This case stated that the class doctrine was abolished and T.C.A. sec. 32-305 was applicable for all wills probated after 1927. This case, just as the commentators and authors of law review articles, severely

criticized the *Denison* case. The case at bar is in a logical sequence with all the above mentioned cases other than *Denison v. Jowers,* supra.

The petition to rehear is denied.