7 F.3d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DOMINION TRUST COMPANY OF TENNESSEE, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant, Cross-Appellee,
First American National Bank, Defendant-Appellee, Cross-Appellant,
William T. Hardison, Jr., Frances Hardison Childers, Defendants.
 Nos. 92-5436, 92-5446.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1993.
 
 Before: MILBURN, RYAN, and NORRIS; Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The United States, in this interpleader action involving two testamentary trusts, appeals from a partial summary judgment in favor of defendant First American National Bank. The issues presented are:
 
 
 2
 Whether the taxpayer's contingent remainder interest in two testamentary trusts is "property" or "rights to property" subject to levy by the United States, and
 
 
 3
 Whether the United States' tax liability claims have priority over the judgment lien of a creditor.
 
 
 4
 First American cross-appeals, presenting one issue for review:
 
 
 5
 Whether capital gains taxes incurred by the trust are attributable to the trust or to the taxpayer.
 
 
 6
 We answer the first two questions in the negative and hold that the capital gains taxes incurred by the trust are the responsibility of the trust, not the taxpayer.
 
 I.
 
 7
 Dominion Trust Company of Tennessee originally filed this interpleader action in the Chancery Court of Davidson County, Tennessee, for determination of the appropriate disposition of assets it held in trust. The trust assets had, at the time of the suit, become vested in defendant William Hardison, Jr., the contingent beneficiary of the trust, and were subject to the claims of his creditors. First American Bank holds a bankruptcy judgment against the trust assets for loans Hardison fraudulently obtained from First American. The United States, represented by the Internal Revenue Service, sought to enforce its tax lien against Hardison by requiring First American to surrender the trust assets to the IRS to satisfy Hardison's tax obligations. The following facts are not in dispute.
 
 
 8
 In 1955, Hardison's grandmother and great aunt died. Their wills created two testamentary trusts. Each trust conveyed half of its assets to the surviving issue of William Hardison, Sr., defendant Hardison's father. As the sole surviving issue of his father, Hardison was to be entitled, therefore, to half of the assets in the trusts if he survived his father. The trusts continue to be held by plaintiff Dominion.
 
 
 9
 Prior to the institution of this lawsuit, First American filed an action against Hardison in the Chancery Court of Nashville, Tennessee, to recover amounts due on loans Hardison had fraudulently obtained from First American. On February 24, 1970, the Chancery Court granted a judgment for First American.
 
 
 10
 In September 1970 and March 1971, the IRS assessed taxes and penalties against Hardison for fraudulent returns he filed in 1967, 1968, and 1969. On December 9, 1970, the IRS filed a notice of federal tax lien with respect to the 1967 taxes, and refiled its lien on April 17, 1974, and May 5, 1980. With respect to the 1968 taxes, the IRS filed a notice of tax lien on August 10, 1971, and refiled the lien on January 25, 1976 and January 21, 1983. With respect to the 1969 taxes, the IRS filed a notice of lien on August 10, 1971, and refiled on November 10, 1975. On June 30, 1970, the IRS filed a proof of claim with respect to these back taxes in Hardison's bankruptcy proceedings. The IRS subsequently filed an amended proof of claim with the bankruptcy court on September 30, 1970.
 
 
 11
 On January 6, 1976, the IRS served a notice of levy upon First American, which was then the trustee of the trusts at issue. First American disregarded this notice because, in its view, Hardison's interest in the trusts at that time was merely a contingent remainder because Hardison's father was still living and therefore the assets had not yet vested in Hardison to create any property right under Tennessee law. Dominion succeeded First American as a trustee of the trusts prior to November 18, 1981.
 
 
 12
 Hardison filed a personal petition in the bankruptcy court on May 4, 1977. First American intervened in that proceeding, and on July 19, 1978, was awarded a judgment against Hardison. First American, however, did not record this judgment with the registrar's office in Davidson County until June 23, 1988. Meanwhile, the IRS filed a proof of claim in Hardison's bankruptcy proceeding.
 
 
 13
 On December 27, 1987, Hardison's father died. As the sole surviving issue, Hardison inherited a share of the trusts. On February 16, 1988, First American petitioned the bankruptcy court to issue an execution and garnishment against Dominion in order to enforce its July 1978 bankruptcy court judgment against Hardison. Dominion responded to this filing by alleging that the trusts were subject to multiple claims and that the IRS was a necessary party to the action. On August 31, 1988, the IRS served final demands upon First National Bank of Clarksville, Tennessee (Dominion's predecessor), demanding the amount owed by Hardison to the United States. On September 15, 1988, Dominion moved to have the IRS joined as an indispensable party.
 
 
 14
 In due course, the bankruptcy court ruled that joinder of the IRS was unnecessary because the IRS's interests would not be "impaired or impeded by an Order of this Court on [First American's] Motion." In Re William Thomas Hardison IV, No. 77-30694 (Bankr.M.D.Tenn. Oct. 19, 1988) (Order). The bankruptcy court then awarded a judgment of execution and garnishment to First American that was subsequently appealed to and affirmed by the district court, First American National Bank v. Hardison, No. 88-00990 (M.D.Tenn.1989), and this court, First American National Bank v. Hardison, Nos. 89-5567/5582, 1990 U.S.App. LEXIS 2721 (6th Cir. Feb. 26, 1990) (per curiam).
 
 
 15
 Dominion then filed this interpleader action in Chancery Court of Nashville, Tennessee, on October 19, 1989, naming First American and the IRS as defendants. The United States removed the case to federal district court without objection from any party.
 
 
 16
 In the district court, First American filed a motion for partial summary judgment to which the IRS filed a cross-motion for summary judgment. The court referred the motions to a magistrate judge, who, following oral argument on the motions, filed his report and recommendation, finding: (1) that Hardison's contingent remainder interest in the trust assets was not "property or rights to property" under Tennessee law in January 1976, and thus that the IRS levy at that time was not effective to reach the trust assets; and (2) that First American, as a judgment lien creditor, was prior in right to the IRS's tax lien because the IRS had failed to refile the notices of lien in accordance with the Internal Revenue Code, I.R.C. § 6323. The magistrate judge recommended that the district court grant First American's motion for summary judgment. The IRS filed objections to the magistrate judge's report.
 
 
 17
 After de novo review, the district court accepted and adopted the magistrate judge's report and recommendation and granted First American's motion for partial summary judgment, from which the United States now appeals. Before the government's appeal, the district court entered an order under Fed.R.Civ.P. 54(b) certifying its order of summary judgment as a final order from which an appeal could be taken.
 
 
 18
 In December 1989, during the pendency of the summary judgment motions, Dominion had requested authority to liquidate certain stocks and bonds it held on behalf of Hardison or his creditors. The district court granted the trustee's motion, and the trustee liquidated these assets in January 1990. This sale of assets created a capital gain in the 1990 tax year, resulting in a tax liability either for the trusts or for Hardison individually.
 
 
 19
 Dominion filed a motion asking the district court to allow payment of the 1990 capital gains taxes from the assets it held, arguing that this tax payment should occur before any distribution of the assets to First American. First American objected. The district court overruled First American's objections and granted Dominion's motion, from which First American now cross-appeals.
 
 II.
 A.
 
 20
 In this first assignment of error, the United States contends that the district court erred in holding that Hardison's contingent remainder interest in the trust was not "property" or a "right to property" at the time of the IRS's levy under I.R.C. §§ 6321 and 6331. The government's argument rests primarily on the theory that at the time of its levy, Hardison's contingent remainder interest in a portion of the trust assets was "property or rights to property" under the code because Hardison then had power to convey his interest.
 
 
 21
 First American contends that Hardison's contingent remainder did not constitute property or rights to property because it was not fixed and determinable at the time the IRS filed its notice of levy. First American contends that under Tennessee law, Hardison's interest was a mere expectancy and not a right to property. First American urges this court to affirm the district court's determination.
 
 B.
 
 22
 This court reviews a district court's entry of summary judgment de novo. National Bank of Detroit v. Shelden, 730 F.2d 421, 423 (6th Cir.1984). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(C).
 
 
 23
 Section 6332(a) of the Internal Revenue Code provides that "any person in possession of (or obligated with respect to) property or rights to property" is "subject to levy" for amounts owed the United States. See also I.R.C. § 6331(a). Section 6321 provides a similar enforcement mechanism for liens against "all property and rights to property." The Supreme Court has held that a defense against such a levy exists if it can be shown that there is no property or right to property in existence. United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985). As the government concedes in its brief, the definition of property or right to property under the levy sections, 6331(a) and 6332(a), is the same as under the lien section, 6321.
 
 
 24
 Since "the federal statute 'creates no property rights' " itself, " 'state law controls in determining the nature of the legal interest which the taxpayer had in the property.' " Id. (citations omitted). Thus, what constitutes property or an interest in property for purposes of section 6332(a) is a matter of state law, but the "consequences" of the state definition are a matter of federal law. Id. As the Supreme Court stated in National Bank of Commerce: " '[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." Id. (citations omitted).
 
 
 25
 As a review of his report and recommendation reveals, the magistrate judge sought to determine whether, under Tennessee law, the IRS could attach Hardison's interest. This, we think, was a mistaken approach. The correct inquiry, mandated by the code, requires that Tennessee law be consulted only to determine whether Hardison's interest would be considered property or a right to property under that state's law. Id. As the National Bank of Commerce Court stated, state law controls only the issue of " 'the nature of the legal interest which the taxpayer had in the property.' " Id. (citation omitted). Thus, the magistrate judge mistakenly relied upon two early Tennessee cases, Nichols v. Guthrie, 73 S.W. 107 (Tenn.1903), and First National Bank v. Pointer, 126 S.W.2d 335 (Tenn.1939), to support his view that no levy or lien was effective. Whether the IRS may attach a taxpayer's contingent remainder interest in trust assets is a question of federal, not state law. Whether the contingent remainder interest is "property" or a "right to property" is a question of state law. We turn now to an analysis of Tennessee law to determine whether property or a right to property existed.
 
 
 26
 In the early case of In re Martin, 47 F.2d 498, 500-501 (6th Cir.1931), which applied Tennessee law, this court held that a bankrupt's contingent remainder interest in a trust was "neither transmissible nor subject to execution." See also In re Baker, 13 F.2d 707, 707 (6th Cir.), cert. denied, 273 U.S. 733 (1926).
 
 
 27
 A more detailed treatment of the definition of "property" or a "right to property" under Tennessee law is found in State ex rel. Elvis Presley Int'l Memorial Found. v. Crowell, 733 S.W.2d 89 (Tenn.App.1987). There, the Tennessee Court of Appeals was confronted with two charitable foundations that laid claim to the use of Elvis Presley's name. In deciding whether the name was properly understood as a property right of the estate, the court stated:
 
 
 28
 The concept of the right of property is multi-faceted. It has been described as a bundle of rights or legally protected interests. These rights or interests include: (1) the right of possession, enjoyment and use; (2) the unrestricted right of disposition; and (3) the power of testimonial disposition.
 
 
 29
 Id. at 96. The court stated that "Tennessee's common law thus embodies an expansive view of property," and went on to hold that Presley's name was a property right owned by his estate. Id. at 97. Before doing so, the court conducted a detailed analysis of the three factors it characterized as comprising "a bundle of rights or legally protected interests." A comparable analysis of those factors, as applied to this appeal, reveals that Hardison's contingent remainder interest in the family trusts is not properly understood as a property right under Tennessee law.
 
 
 30
 First, as a remainderman, Hardison had no right to "possession, enjoyment and use" of his interest in the trusts. Indeed, the government concedes this point.
 
 
 31
 The government also concedes, as to the third prong of Elvis Presley, that Hardison could not effect a "testimonial disposition" of his interest.
 
 
 32
 This case, then, turns on an analysis of the Elvis Presley court's second prong: "the unrestricted right of disposition." The government contends that Hardison had the right to convey his contingent remainder interests; First American argues he did not.
 
 
 33
 In the government's view, the issue is resolved by resort to federal law. We disagree. The question of the right of disposition under the Elvis Presley factors is governed by Tennessee law. The government argues that Hardison's interest is alienable because it is capable of being valued. This evidence, it seems to us, is singularly unpersuasive on the issue of alienability. Any expectation can be assigned an economic value merely by determining the ultimate value and discounting that value by the probability that it will (or will not) be realized. Whether an economic value can be assigned to such an expectancy adds nothing to the inquiry about whether the owner of the interest has an unfettered right to dispose of it.
 
 
 34
 In Hobson v. Hobson, 201 S.W.2d 659 (Tenn.1947), the Tennessee Supreme Court was faced with a testamentary instrument almost identical to the instruments presented in this case. There, the will provided that
 
 
 35
 "I give and devise to my said wife, for and during her natural life or widowhood, three tracts of land.... At her death the same shall be divided between my children then living, and if any of them shall have died leaving a child or children living at her death, then such child or children shall take the parent's share."
 
 
 36
 Id. at 660.
 
 
 37
 During the life of his mother, the testator's son attempted to convey his interest to another person, which was challenged by the administrator of the father's estate. The Tennessee Supreme Court invalidated the conveyance, because the wife/mother still had a life estate in the land. The Hobson court further characterized the son's interest as " 'not an estate, but a mere chance of having one ... a pure expectancy.' " Id. at 662 (citation omitted). Significantly, the Tennessee Supreme Court went on to hold that
 
 
 38
 at the time [the son] executed [the conveyance] his interest was a pure expectancy which could not be conveyed at common law except by way of estoppel ... and his deed of trust was, therefore, in law ineffective at that time to convey the one-sixth undivided remainder interest which it purported to convey.
 
 
 39
 Id. at 662-63 (citation omitted).
 
 
 40
 Like the testamentary instrument in the Hobson case, the trust instruments in this case provide that in the event of Hardison's father's death, one-half of the net income from the trust would go to "the surviving issue of my said son," or to the "surviving issue" of Hardison's father. Thus, Hardison's interest was not only contingent on his father not having any more children, more importantly it was contingent on Hardison surviving his father.
 
 
 41
 While Hobson is obviously an older decision, Hobson 's holding that contingent remainders are not transferrable continues to be cited as valid Tennessee law. See, e.g., Skovron v. Third Nat'l Bank, 509 S.W.2d 497, 513 (Tenn.App.1973).
 
 
 42
 Thus, under the reasoning of Hobson and this court's interpretation of Tennessee law in In re Martin and In re Baker, we find that Hardison did not possess an unfettered right to alienate his contingent interest in the trusts. Since he did not, under the second prong of the Elvis Presley analysis, Hardison did not enjoy "the unrestricted right of disposition."
 
 
 43
 Thus, because Hardison's interest fails to meet the definition of property or an interest in property under Tennessee law, his contingent remainder interest does not come within the scope of I.R.C. §§ 6321, 6331(a), & 6332(a). We agree with the district court and the magistrate judge, albeit for somewhat different reasons, that Hardison's contingent interests as a remainderman in the family trusts were not property or interests in property under the Internal Revenue Code, before his father's death.
 
 III.
 A.
 
 44
 The United States next contends that the district court erred in holding that First American's judgment lien had priority over the IRS's levy. The United States also contends that the district court erred in its finding that because the IRS had failed to file periodic notices of lien after the original levy was filed, the IRS lien lost priority. The government contends that its levies precluded First American from accelerating its priority against the government.
 
 
 45
 First American offers two reasons for affirming the district court's determination that its judgment lien has priority over the IRS's lien. It contends, first, that the IRS failed to comply with I.R.C. § 6323(a), in that it failed to timely refile notices of lien after the original lien was filed. Thus, First American urges this court to hold, as the district court did, that the IRS's failure nullified the effect of the prior filing of the notice of tax lien. Second, First American contends that the IRS's reliance on an alternate ground for perfecting its interest--the original levy--is misplaced because Hardison's contingent remainder was not property subject to levy. Since a levy may only be placed against property or a right to property, even the original lien was ineffective according to First American.
 
 B.
 
 46
 This assignment of error is easily resolved. We have already held that Hardison's contingent remainder interest in the trusts was not property or an interest in property as defined in the code. Since the interest was neither property or an interest in property at the time the IRS sought attachment, the priority issue is moot.
 
 
 47
 The IRS did not perfect its interest because a federal tax lien is only effective against "property belonging to a delinquent taxpayer." Yardas v. United States, 899 F.2d 550, 552 (6th Cir.), remanded, on reh'g, in part on other grounds, 909 F.2d 954 (1990) (emphasis added). Because there was no property here--and the IRS concedes that the property definition controls its interest both as to levies and liens--no lien was perfected. The IRS's lien never "became choate." S & S Gasket Co. v. United States, 635 F.2d 568, 570 (6th Cir.1980).[1]
 
 
 48
 Because Hardison possessed no property or property interest in the trusts, any attempt by the IRS to perfect a lien or to levy against the interest was futile.
 
 IV.
 A.
 
 49
 First American, as cross-appellant, contends that the district court erred in holding that capital gains tax liability from the sale of some of the trusts' stocks and bonds should be paid from the trusts. According to First American, Hardison is liable for these taxes because the trusts had been terminated by prior judicial action. First American argues that the assets of the trusts has been "essentially distributed" to Hardison and his creditors, principally by the filing of the interpleader action. As an alternative argument, First American contends that even if this court were to determine that the trusts' assets had not been distributed, the tax liability is Hardison's, not the trusts'. According to First American, the capital gains in question should be considered as income of Hardison, because the gains are included in his gross income.
 
 
 50
 The government, in contrast, maintains that the district court correctly assigned the capital gains tax liability to the trusts. The government contends that there is no reason to think that the mere filing of an interpleader action terminates the underlying trusts. Similarly, the government argues, the law requires much more than "effective distribution" of assets in order that a trust be considered terminated; actual distribution is required. In response to First American's alternative argument, the government contends that the district court correctly found that First American lacked standing to challenge another taxpayer's tax liability. As a creditor, according to the government, First American has only a third-party creditor's interest in the trusts' tax liability, and this is insufficient to confer standing. Even if standing were found, however, the government argues, First American's position is without merit.
 
 B.
 
 51
 A trust, like an individual or corporation, may incur tax liability. Ordinarily, the trustee is required to make and file trust income tax returns for a trust, and pay federal income taxes, including the capital gains tax, for as long as a trust remains "a taxpaying entity." I.R.C. §§ 6012(b)(4); see also, § 641(b); 26 C.F.R. § 1.641(b)-2. A trust remains a taxpaying entity until the trust terminates. The applicable regulations state that
 
 
 52
 the determination of whether a trust has terminated depends upon whether the property held in trust has been distributed to the persons entitled to succeed to the property upon termination of the trust rather than upon the technicality of whether or not the trustee has rendered his final accounting. A trust does not automatically terminate upon the happening of the event by which the duration of the trust is measured. A reasonable time is permitted after such event for the trustee to perform the duties necessary to complete the administration of the trust. Thus, if under the terms of the governing instrument, the trust is to terminate upon the death of the life beneficiary and the corpus is to be distributed to the remainderman, the trust continues after the death of the life beneficiary for a period reasonably necessary to a proper winding up of the affairs of the trust. However, the winding up of a trust cannot be unduly postponed and if the distribution of the trust corpus is unreasonably delayed, the trust is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the trustee to complete the administration of the trust. Further, a trust will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liabilities and expenses (not including a claim by a beneficiary in the capacity of beneficiary).
 
 
 53
 26 C.F.R. § 1.641(b)-3(b).
 
 
 54
 First American's first argument is easily dismissed. First American relies on a snippet of the district court's opinion in In re William Thomas Hardison IV, No. 3-88-0990, p. 5 (M.D.Tenn. Mar. 29, 1989) (memorandum of the court), which was Hardison's appeal from the bankruptcy case, where the court stated: "[w]ith reference to the interest of Hardison in his family trusts, it seems clear that the trusts have terminated and the only remaining thing to be done is final distribution of the assets."
 
 
 55
 This language does not support First American's claim, however, because the treasury regulations create a special definition for the termination of a trust for tax purposes. As quoted above, the regulations state that a trust terminates when its assets are "distributed to the persons entitled to succeed to the property upon termination of the trust rather than upon the technicality of whether or not the trustee has rendered his final accounting." 26 C.F.R. § 1.641(b)-3(b). The regulations go on to state that "[a] trust does not automatically terminate upon the happening of the event by which the duration of the trust is measured." Id. No assets have been distributed here.
 
 
 56
 Moreover, as the district court stated, the bankruptcy court's language must be read "within the context of a review of the decision of the Bankruptcy Court." In that court, the payment of federal income taxes was not at issue, and the district court was not ruling on the application of the rather singular language of section 1.641(b)-3(b). The language employed by the bankruptcy court cannot fairly be said to constitute prior judicial action with respect to this issue.
 
 
 57
 First American's second argument likewise fails. There is simply no reason to think that the mere filing of an interpleader action by the trustee would work an "effective distribution" of the trusts' assets. Indeed, given the very strict and particular language of the regulations, clearly much more is required for a finding of termination.
 
 
 58
 On First American's final argument--that Hardison, not the trust, is liable for taxes--the district court determined that First American lacked standing, because such a contention "raises the issue of how much tax is owed ... by another taxpayer, ... the trusts." We agree.
 
 
 59
 While we know of no case precisely on point, there is ample authority holding that one may not challenge another's tax liability, even if the third person stands to gain or loose by the eventual outcome. As we have stated, "a third party is not entitled to question the tax liability of another, especially when the IRS is involved in collecting the taxes." In re Campbell, 761 F.2d 1181, 1185 (6th Cir.1985).
 
 
 60
 In United States v. Formige, 659 F.2d 206 (D.C.Cir.1981), the court denied a daughter, who was a limited partner in a family limited partnership, standing to challenge a default judgment for back taxes against her mother whose tax liability would eventually impact the partnership's assets. The court stated, " 'only the taxpayer may question the assessment.' " Id. at 208 (citations omitted). While no formal assessment of taxes has been made by the federal government against the trusts, these principles would seem to control here.
 
 
 61
 Thus, we affirm the district court's ruling on the trusts' capital gains tax liability. The trusts were not terminated as First American contends. Since they were not terminated, the district court correctly ordered the trustee to pay the taxes from the trusts.
 
 V.
 
 62
 For the foregoing reasons, we AFFIRM the district court's disposition of all issues.
 
 
 
 [1]
 We are aware of the recent decision in Congress Talcott Corp. v. Gruber, 993 F.2d 315 (3d Cir.1993). There, the Third Circuit held that borrowers' interest in monies held by a factoring agent as collateral for loans was property subject to attachment by an IRS tax levy. That case, where the issue of what constituted property was determined under New York law, is distinguishable. The interest in Gruber was a pledge, which under New York law was clearly deemed "property." In contrast, Tennessee law mandates the conclusion that the contingent remainder interest in this case is not "property."