Forrest *v.* Porch.

## FORREST *v.* PORCH.

## (*Nashville.* March 9, 1898.)

1. WILL. *Contingent remainder.*

A devise to the widow for life, and "at her death" to testator's "heirs at law," creates a contingent remainder, and the estate goes in fee to such persons only as, at the widow's death, answer to the description of "heirs at law" of the testator. (*Post, pp. 392, 393.*)

Case cited and approved: Bigley *v.* Watson, 98 Tenn., 358.

2. SAME. *Devisees take per stirpes.*

Under a devise of a life estate to the widow and remainder in fee to testator's "heirs at law," the persons answering the latter description at the widow's death take the estate *per stirpes*. (*Post, pp. 393–395.*)

3. SAME. *Residuary bequest to "heirs at law" construed.*

A residuary bequest to "heirs at law" of the proceeds of the sale of both realty and personalty passes, *per stirpes*, to the persons answering that description at date of testator's death. (*Post, pp. 395, 396.*)

Code construed: §§ 4164, 4173 (S.); §§ 3271, 3272 (M. & V.); §§ 2421, 2430 (T. & S.).

Cases cited and approved: Alexander *v.* Wallace, 8 Lea, 571; Jones *v.* Hunt, 96 Tenn., 372.

---

FROM HUMPHREYS.

---

Appeal from Chancery Court of Humphreys County. J. S. GRIBBLE, Ch.

R. T. SHANNON & BRO. for Forrest.

T. L. LANIER for Porch.

CALDWELL, J. H. R. Reece died testate, at his residence in Humphreys County, Tennessee, leaving him surviving a widow, brothers and sisters, nephews and nieces, whose parents had died, and grand-nephews and nieces whose parents and grandparents had died. Of these collateral kindred there were thirty-four in number, and they were the testator's only heirs at law.

This litigation involves a construction of the second, fourth, and fifth clauses of the will.

The second clause is as follows: "I give and bequeath to my beloved wife, Ollie P. Reece, a certain tract or parcel of land, containing, by estimation, about one hundred acres, and bounded as follows: . . . To have and to hold as long as she lives; at her death the said land is to be divided between my heirs at law."

This is an explicit devise of land to the widow during her life, with remainder in fee to the "heirs at law" of the testator. The Chancellor treated the remainder as vested, but the Court of Chancery Appeals was of the opinion that it was contingent. We concur in the latter view. The remainder was contingent, because the testator obviously intended the land to be divided at the death of his widow among such persons as should then sustain to him the relation of heirs at law. The remaindermen are

to be ascertained not at his death, but at the death of his widow, the life tenant; and they are to be such persons as would at that time be his "heirs at law." At his death, when the will took effect, those persons were "dubious and uncertain;" therefore the remainder must be contingent. *Bigley* v. *Watson*, 98 Tenn., 358, 359, and authorities cited.

In what proportion do the remaindermen, when ascertained, take the land? The Chancellor held that they take *per stirpes*, according to the statutes of descent; and the Court of Chancery Appeals held that they take *per capita*, share and share alike. On this question, we concur in the holding of the Chancellor. When the testator directed that the land should be divided among his "heirs at law," he meant that the persons falling within that designation should take as "heirs at law" would take. The phrase, "heirs at law," indicates who shall take, and how they shall take. "Heirs at law" mean the same as heirs general. They are the kindred by blood of a deceased intestate who inherit his land, those upon whom the law of descent casts his title. Such persons take the land by operation of that law, and according to it. They and their respective interests are ascertained and defined by the same law. The testator resided in Tennessee, the land devised is located here, and the will is to be construed with reference to our laws. Consequently, the remaindermen, designated in the will as the testator's "heirs at law," must be held to be

those persons who, in the absence of the will, would inherit the land, at the death of the life tenant, under the laws of descent in this State; and their respective interests must be determined, at that time, by the same laws. The testator did not say, in so many words, that he intended those interests to be determined by those laws. It was not essential that such an intention be so expressed; it is necessarily inferred in the absence of a contrary direction. To entitle or require beneficiaries, described as "heirs at law" of a resident of this State, to take his land, located here, otherwise than in accordance with our laws of descent, the variation therefrom must be distinctly authorized by the language employed. No departure is authorized by the language of this will, and none can be made.

By the third clause of his will the testator bequeathed to his widow certain live stock and other personal property, and gave her a legacy of $4,000 in money. By the fourth and fifth clauses he directed a sale of all of his other property, both real and personal, and concluded with the words, "and when my estate is wound up, I direct that the effects be divided among my heirs at law." The residuum here disposed of amounts to about $15,000, of which $1,100 arose from the sale of land, and the remaining $13,900 from the sale of personalty, collection of debts, etc.

The Chancellor held that all the heirs at law of the testator were entitled to the proceeds of the

land ($1,100), and that his distributees, excluding grand nephews and nieces, only were entitled to the proceeds of personalty ($13,900), each fund to be divided *per stirpes* among those so entitled.

The Court of Chancery Appeals rightly held that all the heirs at law were entitled to share in the aggregate fund of $15,000, and then erroneously held that it should be divided *per capita*, and paid out in thirty-four equal shares.

Undoubtedly, the beneficiaries of this provision take vested interests, and are to be ascertained as of the date of the testator's death. The same phrase, "my heirs at law," used in the second clause, is here repeated, and it was manifestly intended to convey the same meaning here as there, with the single exception that it refers to persons occupying the particular relation at different periods of time. In the former instance it relates to those within that designation at the death of the widow, and in the latter instance it relates to those answering the description at the testator's own death. In both instances it includes all persons who, in the absence of a will, would be in that relation to the testator at the particular time; and, in both instances, all who are included take *per stirpes*, according to the statutes of descent. The reason for our holding as to the manner or proportion in which the respective claimants will be entitled to share the testator's bounty, have been given in our construction of the

second clause, and need not be repeated. They apply alike to both provisions.

The former provision relates alone to real estate, which descends to collateral kindred without limitation of representation (Code, § 2421; M. & V., § 3271; Shann., § 4164; *Alexander* v. *Wallace*, 8 Lea, 571), and the latter provision relates mainly to personalty, in which there is no representation among collaterals after the children of brothers and sisters (Code, § 2430; M. & V., § 3272; Shann., § 4173; *Alexander* v. *Wallace*, 8 Lea, 571, 572); yet there is no indication that the testator intended to refer the respective provisions of his will to these statutes, respectively. On the contrary, his use of the words, "heirs at law," in both provisions, when strictly applicable under the former statute only, shows an intention to conform both provisions to the same rule, and to embrace as beneficiaries all persons included in that designation at the times indicated for their ascertainment, respectively, the participation in each instance to be in that proportion (*per stirpes*) in which his "heirs at law" would take undevised land. Such was the intention of the testator. Being lawful, that intention must prevail. *Jones* v. *Hunt*, 96 Tenn., 372, and citations.

Modify the decree of the Court of Chancery Appeals so as to conform to this opinion.