RAYMOND BURDICK

*v.*

KENNETH N. GILPIN, JR., et al.

*(Knoxville,* September Term, 1958.)

Opinion filed June 5, 1959.

Fowler, Rowntree & Fowler and W. W. Kennerly, Knoxville, for petitioners (complainants).

Tapp, Carson, Tate & Felts, Robert S. Young, Jr., and Guy Shanks, Knoxville, and Weisman, Celler, Allan, Spett & Sheinberg and Ralph Schwartz, New York City, for defendants.

The opinion of Judge Howard in the Court of Appeals follows:

This appeal involves the construction of the will of Colonel Charles M. McGhee, who died on May 7, 1907, while residing in the State of New York. Before moving to New York he resided in Knoxville, Tennessee, where he owned valuable business property located on Gay Street, the rents therefrom in recent years producing an estimated income of more than $100,000 annually.

Colonel McGhee was survived by three married daughters, Margaret McGhee Baxter, Betty McGhee Tyson, and Eleanor McGhee Neely, and nine grandchildren. Two of said grandchildren are the children of a predeceased daughter, and during his lifetime the testator made ample provisions for them and they are not involved herein.

Since Colonel McGhee's death, two of his daughters and one grandson have died. The grandson, McGhee Tyson, died in 1918; one daughter, Betty McGhee Tyson, mother of McGhee Tyson, died in 1933, leaving a surviving daughter, Isabella Tyson Gilpin; and the other daughter, Margaret McGhee Baxter, died in 1942, leaving five surviving children, including Constance Baxter Gower, who died testate in 1952, while residing in the State of New York. His only living daughter, Eleanor McGhee Neely, age 87, an incompetent who has no children, presently resides in the State of Massachusetts.

Besides the testator's grandchildren, there are numerous great-grandchildren, as well as great-great-grandchildren.

The bill seeking construction of the will was filed by the executors and trustees under the will of Constance Baxter Gower, testator's granddaughter, against the three successor trustees of the McGhee Trust, Eleanor McGhee Neely, and others, including the grandchildren and their issue, some of which are minors for whom guardians ad litem have been appointed and proper answers filed.

The will was executed in the State of New York on July 10, 1905, and following the testator's death was duly probated in the County Court of Knox County. Since the will was probated, the original named trustees have died and there have been several successor trustees appointed whose duties are clearly defined. While the controversy in question relates chiefly to Item 5, we quote other Items of the will, including Item 5, as follows:

"First: I direct that my funeral and testatmentary expenses and all my just debts be paid as soon as practicable after my death.

"Second: I authorize my executors and trustees hereinafter named, or such of them as shall qualify, and the survivor or survivors of them, to sell all or any part of the real estate of which I shall die seized or possessed, at public or private sale at any time after my decease, upon such terms as may seem to them or him expedient. I direct, however, that none of my real estate hereinafter described, in the City of Knoxville shall be either partitioned in kind or sold during the lifetime of my daughter Eleanor, and no devisee under this will shall have such power of sale or partition within said period."

(By the Third Item the testator disposes of certain household effects, etc., about which there is no dispute.)

(By the Fourth Item, the testator makes certain gifts to his two granddaughters by a predeceased daughter, also about which there is no dispute.)

"Fifth: I give and bequeath unto my three sons-in-law, George W. Baxter, Lawrence D. Tyson and James C. Neely and the survivor of them, as Trustees, In Trust the following real estate in the City of Knoxville, *Knoxville* County, Tennessee, with the buildings thereon erected, namely: (Here appears the description of the property) said real estate to be held by said trustees in trust during the lifetime of my daughter Eleanor, with power in the trustees to execute leases of all or any of said parcels of real estate for such term or terms as they may deem advantageous, and to collect the rents, issues and profits arising therefrom and to pay

thereout the taxes, interest on any mortgages, and the expenses of fire and other insurance, together with all other expenses incidental to the proper management thereof, and to pay over and distribute the net rents, issues and profits so accruing quarterly, one-third each to my three daughters, Eleanor, Margaret and Betty.

"In the event of the death of any of my said daughters during the term of this trust, the share of the net income which she would have taken if living shall be paid to her surviving issue in equal shares per stirpes, or in default of issue shall be distributed to and among my remaining daughters and the issue of any deceased daughter, in equal shares per stirpes.

"On the death of my said daughter, Eleanor, I direct that the said real estate in Knoxville shall be partitioned or sold and the said real estate or its proceeds shall then be divided as follows: One-third thereof to the issue of my daughter Eleanor then living, or in default of issue to my daughters Margaret and Betty and their issues in equal shares per stirpes.

"In the event of the death of any of my said daughters, I direct that the share which such daughter would have taken if living shall go to her issue in equal parts."

Complainants' original bill avers

"That it was the intention of the testator, and the will should be so interpreted, that the testator's three daughters as long as they lived would be entitled to the income and that upon the demise of either, that the issue of such daughter living at the time of the demise of the daughter would take absolute title to the income,

and could accordingly bequeath said income by Last Will and Testament. Accordingly, it is averred that Margaret Baxter, a daughter of said Charles M. McGhee, died on March 26, 1942, and thereupon her children then living, to-wit, Constance B. Gower, Margaret B. Foster, Katherine L. Burrage, Eleanor Beadleston and Charles McGhee Baxter, became vested with such income and that upon the demise of said Constance B. Gower, as aforesaid, her interest therein, being 1/5 of 1/3 of the total income of said trust, passed to the Complainants, who are Executors of and Trustees under her Last Will and Testament, and that they are now entitled to said income and have been since the demise of Constance B. Gower. * *

"Complainants further show to the Court that a controversy has arisen presenting the question as to whether or not the Complainants as Executors of the Trustees under the Will of Constance B. Gower, deceased, have become vested with any part of the property presently held by the defendant Trustees under the 'Fifth' paragraph of the Will of Charles M. McGhee, deceased. This issue is to be determined by giving consideration to the same questions, among other, as are involved in a determination of the question as to the present disposition of the income from that portion of said trust assets. It is necessary that complainant Executors and Trustees be advised as to whether or not to include the commuted value of the income and corpus of this trust among the assets of the estate of Constance B. Gower in determining the amount of estate taxes due the United States Government. They show that the attitude of the Successor Trustees under the Will of Charles M. McGhee, in

paying the income from said trust to the issue of Constance B. Gower rather than to Complainants, discloses their intention of delivering the corpus to said issue; and, being confronted with this situation, Complainants are advised that they have a right to seek the interpretation of this Honorable Court with respect to their rights in and to the corpus of said trust property upon the death of Eleanor Neely by virtue of the Declaratory Judgments Act of the State of Tennessee, particularly those sections incorporated under Section 8835 et seq., of the Tennessee Code of 1932.

"With respect to the disposition of the trust assets upon the death of Eleanor Neely, as well as the income therefrom in the meantime, it is shown to the Court that said trust assets and the income therefrom were devised and bequeathed by Constance B. Gower to complainant Executors and Trustees under the * * * Will of Constance B. Gower, Exhibit A hereto, and it is averred that Complainants have a right to have their claim established at this time against the said trust created by the will of C. M. McGhee and averred that they do have a just claim to 1/15 undivided interest in and to said trust assets * * *.

*   *   *   *   *   *

"The attention of the Court is called to the Will of Charles M. McGhee, deceased, as a whole, in which he indicates as intention to favor his daughters and their immediate children and discloses a purpose that the income and corpus of said trust should be beneficial only to his three daughters and their children living at the time of their demise, and that he had no intention of descendants more remote benefiting either from the

income or the corpus of said trust; and, accordingly, if the Court could not sustain the theory hereinbefore expressed that Mrs. Gower became vested with the title to the income and corpus by reason being of the 'issue' of C. M. McGhee, deceased, then in that event Complainants aver that it was his intention to give nothing to his lineal descendants more remote than grandchildren and accordingly to vest such grandchildren with title thereto upon the demise of their mother.''

In their answer the trustees of the McGhee will denied that complainants' decedent, Constance Baxter Gower, took or was entitled to take upon the death of her mother, Margaret McGhee Baxter, a vested transmissible interest in either the income or corpus. They averred that Constance Baxter Gower, upon the death of her mother, was entitled to and was paid 1/5 of 1/3 of the net income from the property, and that upon her death, her children were entitled to and have been paid said 1/5 as provided by the will; that the claim made by the trustees of her will to a 1/5 of 1/3 of the corpus should be disallowed, because (1) they are not entitled thereto under the terms of the McGhee will, and (2) the claim is premature, as the trust created by said will is still in existence, and the corpus not subject to be divided until the death of the life tenant, Eleanor McGhee Neely.

Upon the hearing the Chancellor held inter alia (1) that the descriptive terms ''her surviving issue'' and ''her issue'', as used in the Fifth Item, paragraphs 3 and 5 of the will, signified children who, upon the death of their mother, took a vested transmissible interest to both the income and corpus, and (2) that Constance Baxter Gower,

upon the death of her mother, Margaret McGhee Baxter, "became vested with a one-fifteenth (1/15) share of both the income and the corpus of the Trust Estate of Charles M. McGhee," which she could transmit by will to complainants, as trustees, and a decree based thereon was accordingly entered.

From the aforesaid decree the McGhee trustees, as well as numerous minors, by their guardians ad litem, have perfected an appeal to this Court where, by one assignment of error, the following questions are presented for our determination:

(1) Did Constance Baxter Gower, upon the death of her mother, acquire a vested transmissible interest in the corpus of the Trust which she could dispose of by will?[1]

(2) Did Constance Baxter Gower, upon the death of her mother, acquire a vested interest in the future net income from the trust, which she could dispose of by will?

In the construction of wills, it has long been the established rule that the Courts assiduously seek to ascertain the intention of the testator, and when ascertained it will be given effect unless it contravenes some rule of law or public policy. In applying this rule, it is necessary to look to the entire will and not to isolated parts thereof, and the testator's intention must be determined from what he has written and not from what it is supposed he intended. *Henry v. Hogan,* 23 Tenn. 208; *Ensley v. Ensley,* 105 Tenn. 107, 58 S.W. 288; *Vines v. Vines,* 143 Tenn. 517, 226 S.W. 1039; *Eckhardt v. Phillips,* 176 Tenn. 34, 137 S.W.2d 301; *Podesta v. Podesta,* 28 Tenn.App.

---

[1] Her will makes no reference to property located in Tennessee.

282, 189 S.W.2d 413; Phillips Pritchard Wills & Estates, 3rd Ed., Secs. 384, 387, 388, pp. 351, 353, 354.

In the light of the foregoing rules of construction, we shall now consider the pertinent provisions of the present will.

As appears, the present will provides that the trust terminates *"On the death of my * * * daughter, Eleanor,"* at which time "the said real estate * * * shall be *partitioned* or sold and the said real estate or its proceeds *shall then be divided * * *."* (Emphasis supplied.) The emphasized words seem to particularly bring the instant will within the "Class Doctrine Rule" as announced in *Satterfield v. Mayes,* 30 Tenn. 58; *Forrest v. Porch,* 100 Tenn. 391, 45 S.W. 676, and subsequent decisions, where the interests were held to vest only upon the termination of the trust, because of the use and significance of the words "at her death the said land is to be divided."

From the many and varied reported decisions, it appears that the "Class Doctrine Rule" has presented quite a problem to the Courts of this State since it was first announced. See article entitled "The Tennessee Class Doctrine: A Spectre at the Bar," Tennessee Law Review, Vol. 22, No. 7, p. 943. Nevertheless, the Rule, though announced more than 100 years ago, is still recognized and applied. *Nichols v. Guthrie,* 109 Tenn. 535, 73 S.W. 107; *Sanders v. Byrom,* 112 Tenn. 472, 79 S.W. 1028; *Tate v. Tate,* 126 Tenn. 169, 148 S.W. 1042; *Rinks v. Gordon,* 160 Tenn. 345, 24 S.W.2d 896; *Jennings v. Jennings,* 165 Tenn. 295, 54 S.W.2d 961; *Hobson v. Hobson,* 184 Tenn. 484, 201 S.W.2d 659; *Felts v. Felts,* 188 Tenn. 404, 219 S.W.2d 903; *Denison v. Jowers,* 192 Tenn. 356, 241 S.W.2d 427.

In *Hobson v. Hobson,* supra [184 Tenn. 484, 201 S.W. 2d 660], Item IV of the will provided that "At [the] death" of the life tenant, the land "shall be divided," etc., and the Court held that the remainders were contingent to a class whose membership must be surviving at the time when the land was to be "divided," thereby reaffirming the Class Doctrine Rule announced in *Satterfield v. Mayes,* supra, as follows:

"Where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time of payment or distribution of the fund is fixed at a subsequent period, or on the happening of a future event, the entire interest vests in such persons only as at that time fall within the description of persons constituting such class."

Applying the Class Doctrine Rule in the Hobson case, the Court said:

"We think every feature of the above quoted rule is plainly reflected in that provision of Item IV of the will now under consideration. The land is to be divided on the happening of a future event, to-wit, the death of the life tenant. It is to be divided at that time between only the children of the testator living at that time and the children of any predeceased child living at that time, such children to take the share which their parent would have taken had he been living at the time of the death of the life tenant. One or more children of the testator who were living at the time of the testator's death may die before the life tenant or they may each have one or more children born after the death of the testator and before the death of the life tenant and

then they or their children may die before the life tenant. These are obviously truths from which it necessarily follows that the devise in question is made to a class of persons subject to fluctuation by increase or diminution of its number in consequence of future births or deaths before the death of the life tenant, and such as do die before the death of the life tenant take no interest in the remainder. We are unable to place any other construction upon the language used in this provision of the will."

In *Felts v. Felts,* supra [188 Tenn. 404, 219 S.W.2d 904], the Item in controversy provided, "Then my Estate shall be *divided* Equally between my lawful heir," and in applying the Class Doctrine Rule thereto, the Supreme Court said:

"We agree with the Chancellor that our construction of the meaning and effect of this clause is controlled by *Forrest v. Porch,* 100 Tenn. 391, 45 S.W. 676, where a substantially identical clause, 'at her death (the life tenant) the said land is to be divided between my heirs at law,' was held (1) to create a contingent remainder and to postpone the vesting of the estate until the death of the life tenant, when it was held to vest in those heirs of the testator then living; and (2) to compel division 'per stirpes,' and not 'per capita.'

"In the will before us, use of the word 'divided' necessitates the insertion of the plural 'lawful heirs,' and as the Court said in *Forrest v. Porch,* supra:

" 'The remainder was contingent, because the testator obviously intended the land to be divided at the death of his widow among such persons as should then

sustain to him the relation of heirs at law. The remaindermen are to be ascertained, not at his death, but at the death of his widow, the life tenant; and they are to be such persons as would at that time be his heirs at law.' 100 Tenn. at pages 392, 393, 45 S.W. at page 676.

''Commenting on the construction reached in *Forrest v. Porch,* supra, Judge Swiggart said in *Taylor v. Dickerson,* 167 Tenn. 121, at [page] 123, 67 S.W.2d 137:

'' '* * * we think the testamentary intention to postpone the time of the vesting of the remainder estate was inferred by the court from the use and significance of the word 'divided'; a word importing the disposition of the land itself rather than the intangible title to the land.'

''There is here no difference in meaning between 'lawful heirs' and 'heirs at law,' and the word 'equally' is surplusage in this sentence, because equal division would be presumed unless a different intention was expressed. Equal division was ordered in *Forrest v. Porch,* supra, without the use of the word 'equal' or its equivalent.

''Where the residue was bequeathed to testator's heirs at law, such heirs, to share equally, they took per stirpes.'' (Citing cases.)

In the instant case the language used by the testator is more definite as to when the corpus is to be divided than in the wills of *Forest v. Porch,* supra, and the other cases cited, because the present will expressly provides *''On the death of my * * * daughter,* Eleanor, I direct that the said real estate * * * *shall be partitioned* or sold

and the said real estate or its proceeds *shall then be divided* * *,'' the time fixed therefor being clear, definite and unambiguous. (Emphasis supplied.) Moreover, by the words ''One-third thereof to the issue of my daughter Eleanor then living'' conveys the impression that the gift of the corpus is to members of a class living at the termination of the trust.

Nor can we pass unnoticed the latter portion of the Second Item of the will where the testator directs ''that none of my real estate hereinafter described, in the City of Knoxville shall be either partitioned in kind or sold during the lifetime of my daughter Eleanor, and no devisee under this will shall have such power of sale or partition within said period.'' Because of this restraint and for other reasons pointed out, we are of the opinion (1) that Constance Baxter Gower had no vested interest in the corpus of the trust which she could convey by will, (2) that the phrases ''on the death of my daughter Eleanor'' and ''the said real estate or its proceeds shall then be divided,'' signify clearly that testator intended distribution to a class, the members of which to be determined at Eleanor's death, and (3) that the terms ''equal shares per stirpes'' and ''equal parts'' show an intention to have the division of the corpus per stirpes. *Forrest v. Porch,* supra; *Felts v. Felts,* supra; *Denison v. Jowers,* supra; Phillips Pritchard Wills & Estates, 3rd Ed., Sec. 442, p. 386, Sec. 767, Vol. 2, p. 302; Page on Wills, Vol. 3, Sec. 1070, p. 267.

Nor did Constance Baxter Gower, upon the death of her mother, take a vested transmissible interest to 1/5 of 1/3 of the future net income from the trust which she could dispose of by will, for the following reasons:

By paragraph 2 of the Fifth Item of the will, the testator directs to whom the daughter's one-third share of the net income shall be paid in the event of her death during the term of the trust, namely: That the share which said daughter "would have taken if living shall be paid to her surviving issue in equal shares per stirpes." From the language used, we can find no indication that the testator intended for the income to vest during the existence of the trust. Had such been his intention, he would have so indicated, and we must determine his intention from what is actually written in the will. Besides, the word "issue" includes all persons who have descended from a common ancestor, and unless controlled by the context, means lineal descendants without regard to degree of proximity or remoteness. *Ridley v. McPherson,* 100 Tenn. 402, 43 S.W. 772; *Third National Bank in Nashville v. Noel,* 183 Tenn. 349, 192 S.W.2d 825. In the present case, we can find no indication of an intention on the part of the testator to make any distinction between his lineal descendants. Nor, in ascertaining the testator's intention, can we ignore his expressed restraint against sale or partition of the property during the existence of the trust.

For the foregoing reasons, we are of the opinion that it was Colonel McGhee's intention that none of his lineal descendants take a vested interest in the net income during the existence of the trust; that such being his intention, the share of the net income to which Constance Baxter Gower was entitled, if living, was, upon her death, payable "per stirpes" to her surviving issue.

Accordingly, the decree will be reversed at complainants' costs, and as the case is before us on a discretionary

appeal with other questions having been expressly reserved, the cause is remanded for a decision on said questions, and for proper references as to attorneys' fees, including fees for guardians ad litem.

Reversed and remanded.

PER CURIAM.

This cause involves the proper construction of the will of the late Charles M. McGhee. The Chancellor's decree construing the will was reversed by the Court of Appeals, and this Court granted certiorari to review these conflicting decisions. We have heard oral argument of counsel and studied with care the entire record and the briefs of counsel for the respective parties.

We feel that the Court of Appeals is correct in its decision of the case. We therefore adopt its opinion as the opinion of this Court.

BURNETT, JUSTICE, not participating.