IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 10, 2024 Session

## LORENZO C. WHITE, ET AL. v. CAROLYN FIELDS HAYES, ET AL.

**Appeal from the Chancery Court for Tipton County**
**No. 16650      William C. Cole, Chancellor**

_____

**No. W2021-01345-COA-R3-CV**

_____

This appeal concerns the estate of Dr. Hillery W. Key ("Dr. Key"), who died testate in 1912.  These proceedings began in 1998 in the Chancery Court for Tipton County ("the Trial Court").  The parties are descendants of Dr. Key.  Odessa Rose and Marilyn Locke ("Plaintiffs," collectively)[1] advocate a per capita distribution of Dr. Key's estate.  Carolyn Fields Hayes and Frederick Fields ("Hayes Defendants," collectively) and Larry Murrell, Jr., Joyce A. Carter, Dorethea McIntyre, and Lynnie Higgs ("Murrell Defendants," collectively) ("Defendants," all defendants together) assert that this Court, in a 2005 opinion, already decided upon a per stirpes distribution.  The parties reached an agreement on the record in open court ostensibly ending this long-running matter, but Plaintiffs have appealed anyway.  Defendants filed motions to dismiss.  We hold, *inter alia*, that Plaintiffs are bound by the agreement announced in court whereby the parties waived their right to appeal. We hold further that the law of the case doctrine prevents Plaintiffs from relitigating the distribution of Dr. Key's estate. We affirm.  Defendants' motions to dismiss are denied as moot.  We find this appeal frivolous, and remand for the Trial Court to award Defendants reasonable attorney's fees and expenses under Tenn. Code Ann. § 27-1-122, to be paid by Plaintiffs rather than from the common fund in this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Thomas I. Bottorff, Brentwood, Tennessee, for the appellants, Marilyn Locke and Odessa Rose.

_____

[1] Plaintiffs were substituted for the original appellant, Vernon White, who died while this appeal was pending.

Marti L. Kaufman and Zachary K. Monroe, Memphis, Tennessee, for the appellees, Carolyn Fields Hayes and Frederick Fields.

Thomas Branch, Memphis, Tennessee, for the appellees, Larry Murrell, Jr., Joyce A. Carter, Dorethea McIntyre, and Lynnie Higgs.

## OPINION

## Background

In an opinion authored by now-Chief Justice Holly Kirby, *White v. Hayes*, No. W2004-01281-COA-R3-CV, 2005 WL 1303118 (Tenn. Ct. App. June 1, 2005), *perm. app. denied Dec. 5, 2005*, this Court concluded that Dr. Key's will provides for a per stirpes distribution. We stated, in substantial part:

> This is a will construction case. The testator died in 1912, leaving a holographic will. In the will, the testator left his real estate to his children for life, then to his grandchildren for life, then to his great-grandchildren until they became of age, then to be divided "as law directs." In 1992, after the last grandchild had died, the great-grandchildren of the testator petitioned the trial court to interpret the will and set out the rights of the parties. The trial court concluded that the testator intended to leave the remainder interest in his property to the great-grandchildren per stirpes. The appellant great-grandchild filed the instant appeal, claiming that the trial court should have construed the devise as being per capita, not per stirpes. We affirm, concluding that the trial court's finding of a per stirpes division of the property is consistent with the laws of intestate succession in Tennessee.
>
> Dr. Hillery Key ("Dr. Key") died in 1912, leaving a holographic will ("the Will"). Paragraph six (6) in Dr. Key's will states:
>
>> I desire and will that my real estate shall be enjoyed by my children during their lives as tenants in common; then by my grandchildren during their lives and then by my great-grandchildren until they become of age. **Then said estate may be divided as law directs.** This bequest is of course subject to the bequests made above.
>
> (Emphasis added). Dr. Key's last living grandchild died in 1992. ***See White v. Hayes***, No. W2002-00669-COA-R3-CV, 2003 WL 22204517 (Tenn. Ct.

-2-

App. Sept. 15, 2003). At that point, the life estate in the grandchildren had ended, and the remaining provisions in the Will were triggered.

In 1998, great-grandchild Plaintiff/Appellant Reverend Vernon R. White ("Appellant"), along with sixteen other of Dr. Key's great-grandchildren, petitioned the trial court to interpret Dr. Key's Will and to state each party's interest in Dr. Key's estate. *Id.* at *1. The Defendants/Appellees, Dr. Key's remaining living heirs, were named as respondents. In construing the will, the trial court held that paragraph six, quoted above, violated the common law Rule Against Perpetuities. On the first appeal of this case, this Court reversed and remanded for the trial court to reconsider the issue in light of the Tennessee Uniform Statutory Rule Against Perpetuities, Tennessee Code Annotated § 66-1-201. *Id.* at *2.

On April 13, 2004, after the remand, the trial court entered an order holding that paragraph six did not violate the statutory Rule Against Perpetuities. The trial court then set out its interpretation of the Will and the individual interests thereunder. The trial court determined that "each grandchild who survived his or her parent and 'became of age' would take his or her share or interest of the real estate, per stirpes." From that order, Appellant Vernon White now appeals.

On appeal, Appellant argues that the trial court erred in determining that Dr. Key's estate should be divided "per stirpes." Rather, he claims that Dr. Key's intent was that the estate would be divided "per capita" to each of the great-grandchildren, with each deceased great-grandchild's share going to the children of the deceased great-grandchild. The facts in this case are undisputed. The issue presented by Appellant involves an interpretation of the Will, which is an issue of law. Thus, we review the trial court's decision *de novo*, with no presumption of correctness. ***See In re Estate of Vincent***, 98 S.W.3d 146, 148 (Tenn. 2003).

***

In this case, the pertinent language of the Will is straightforward. The trial court observed that the plain language of the Will provides that, once the last grandchild is deceased, and the great-grandchildren become of age, then the "estate may be divided as law directs." This appears to allude to the law of intestate succession, which would govern in the event the Will provisions no longer applied. The law of succession in Tennessee is addressed in Tennessee Code Annotated § 31-2-104. That statute provides:

-3-

(b) The part of the intestate estate not passing to the surviving spouse under subsection (a) or the entire intestate estate if there is no surviving spouse, passes as follows:

(1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, **but if of unequal degree, then those of more remote degree take by representation. . . .**

Tennessee Code Annotated § 31-2-104(b)(1) (2001); *see also* Tenn. Code Ann. § 31-2-103 (2001) (providing that real property shall pass according to § 31-2-104). The phrase "issue of the decedent" means all direct lineal descendants of the decedent, unless otherwise limited. *See Burdick v. Gilpin*, 205 Tenn. 94, 325 S.W.2d 547, 554 (Tenn. 1959); *Carter v. Hutchinson*, 707 S.W.2d 533, 538 (Tenn. Ct. App. 1985). The statute states on its face that, when the decedent dies with issue of unequal kinship, as in the instant case, then the estate should be distributed "by representation," which refers to a "per stirpes" distribution, where "the issue of a deceased person take or inherit the share of an estate which their immediate ancestor would have taken or inherited if living." *See Doramus v. Rogers Group, Inc.*, No. M1998-00918-COA-R3-CV, 2001 WL 196974, at *4-*5 & n. 5 (Tenn. Ct. App. Feb. 28, 2001). Therefore, the trial court's construction of the language in Dr. Key's Will as making a devise "per stirpes," rather than "per capita," was consistent with the plain language in Section 31-2-204. *See Forrest v. Porch*, 100 Tenn. 391, 45 S.W. 676, 677 (Tenn. 1898) (finding that, where a life estate was granted to the testator's widow and the remainder in fee to the testator's "heirs at law," the heirs were to take per stirpes); *see generally* L.S. Tellier, Annotation, *Taking Per Stirpes or Per Capita Under Will*, 13 A.L.R.2d 1023 (1950). There being no evidence that Dr. Key's intention was otherwise, we agree with the trial court's determination that the devise in paragraph six (6) was intended to be per stirpes, not per capita.

Appellant argues that construing the Will as making a "per stirpes" devise is not consistent with certain conversations between Dr. Key and unidentified persons "who were to see that his intentions were carried out," and it is not consistent with the Will as it was explained to the great-grandchildren by their parents. The record on appeal, however, contains no such evidence, and we are limited in this appeal to consideration only of information in the appellate record. *DCS v. Owens*, 129 S.W.3d 50, 56

-4-

(Tenn. 2004). Based on the information in the record, we must conclude that the trial court correctly interpreted the will.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Reverend Vernon White, and his surety, for which execution may issue, if necessary.

*White*, 2005 WL 1303118, *1-3 (footnotes omitted).

A petition later was filed to partition Dr. Key's farm. The farm was sold, and the proceeds were deposited with the clerk and master. In October 2021, the Trial Court entered an order stating, in part:

> **WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the proceeds of this estate shall be distributed *per stirpes* as opposed to *per capita* for the following reasons:
> 1. The issue of the method of distribution in this case was decided with finality by the Court of Appeals, in the cases of ***Lorenzo C. White, et al. vs. Carolyn Fields Hayes, et al***, No. 2002-00639-COA-R3-CV (Tenn. Ct. App., Nov. 26, 2003) and ***Lorenzo C White, et al. vs. Carolyn Fields Hayes, et al***, No. W2004-01281-COA-R3-CV (Tenn. Ct. App., Dec. 28, 2005).
> 2. That the case of ***Farley v. Farley***, 115 S.W. 921 (Tenn. 1908), is inapplicable to the provisions of the Will in this case.
> 3. That the Court found there was no "family agreement" in this case for the following reasons:
> a) The Court of Appeals, on two (2) occasions and Chancellor Brasfield, on two (2) occasions, Ordered that the Will in the instant case divides the assets of the estate *per stirpes*.
> b) Once a court orders assets of an estate *per stirpes*, which is a question of law, the Will itself cannot be the written document used to prove a "family agreement." According to ***Wood v. Lowery***, 238 S.W. 3d 747 (2007), in order to prove a "family agreement", you must have a contract and consideration for that contract. However, in the instant case, there is no consideration for the "family agreement".
> c) According to T.C.A. § 29-2-101(5), there must be a writing required "upon any agreement or contract which is not to be performed within the space of one year from the making of the agreement or contract; unless the promise or agreement, upon which such actions shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract

for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought," and there is no such written document in this case.

d) There has been no evidence produced that there is a universal agreement in this cause.

e) Therefore, Petitioners' have failed to carry their burden of proof that such an agreement existed. You cannot have an oral agreement to prove a "family agreement."

On December 15, 2022, the parties announced an agreement on the record in open court regarding outstanding matters in the case. In February 2023, the Trial Court entered a consent order reflecting the agreement, stating:

This cause came on to be heard on this 15th day of December, 2022, upon the filing of a Petition to Partition on March 11, 2009, the filing of Affidavits of Attorney Fees by David Owen, Thomas Branch, Marti L. Kaufman and Thomas Bottorff and upon the entire record in this case, whereupon the Court finds as follows:

1. That all parties in this cause that have retained counsel have their counsel present.

2. That all parties consent to waive any rights that may exist under the Tennessee Rules of Civil Procedure (hereinafter "TRCP") or the Tennessee Rules of Appellate Procedure (hereinafter "TRAP") to appeal this Order or any prior Order entered in this cause. As evidenced by their signatures below, Counsel have consulted with their clients and agree that this waiver is made freely, knowingly, voluntarily and with their full knowledge and consent.

3. That all parties consent to waive any rights that may exist under TRCP 59 or any other applicable TRCP that would request of this Court to alter or amend this Order, or any other Order entered in this cause.

4. That Exhibit B attached to the Order on Hearing Held on October 27, 2022 to Determine the Schedule of Issue for Rev. Dr. Hillery W. Key, Deceased for Distribution of the Common Fund and the Request for Sanctions which was signed by the Court on December 15, 2022, which is attached hereto and incorporated herein as Exhibit A to this Order, and reflects the distribution of funds to be paid to the living issue of Dr. Hillery W. Key, deceased.

5. That the request for attorney fees and accompanying Affidavits of Attorney Fees submitted are approved as follows:

a. Thomas Bottorff, Esq. $55,471.42.

b. Thomas Branch, Esq. $42,425.00

c. Marti L. Kaufman, Esq. $19,112.00

d. David Owen, Esq. $13,850.00

6. That all issue of Dr. Key will bear the cost of the attorney fees referenced in Paragraph 4 above, in proportion to their fractional interest as set forth in Exhibit A and attached hereto.

7. That all issue of Dr. Key receiving a disbursement will provide the Guardian Ad Litem, David Owen, with an executed Substitute Form 1099-S for reporting their addresses and with their Social Security Number prior to receiving said disbursement. Should any issue of Dr. Key not comply with this provision within sixty (60) days from the date of notification by the Guardian Ad Litem of the entry of this Order, then their disbursement will be paid directly to the Clerk and Master of the Chancery Court of Tipton County.

8. That all money previously paid to America Nelson will be calculated as an advancement against her share of the distribution as if repaid into the Common Fund.

9. That $990.00 of the attorney fees paid to Elizabeth Ziarko out of the Common Fund will be calculated as an advancement against America Nelson's share of the distribution, as if repaid into the Common Fund.

10. That the Clerk and Master of the Chancery Court of Tipton County, Tennessee will distribute all funds currently held in this case to the Guardian Ad Litem, David Owen for distribution pursuant to this Order.

11. That upon the entry of this Order, the Managers of the Dr. Hillery W. Key Farm shall forward all funds in the Farm's bank account (approximately $8,126.00) to the Guardian Ad Litem, David Owen, to compensate him for fees and expenses connected with his distribution of these funds.

12. That the Guardian Ad Litem, David Owen, will be responsible for calculating and disbursing all distributions to the living issue of Dr. Key, the attorney fees set forth in Paragraph 5 above, the cost of the Court Reporter, Cheri Sullivan, for the hearing held on December 15, 2022 and the payment to Cheri Sullivan includes the cost of the transcript.

13. That any recorded liens against any living issue of Dr. Key that are entitled to a distribution will be paid out of that issue's share of the distribution and not from the Common Fund.

14. That any issue of Dr. Key who are entitled to a distribution referenced above in Exhibit B but that are no longer living at the time of distribution shall have their portion of the distribution paid directly to the Clerk and Master of the Chancery Court of Tipton County.

15. That no distributions will be made until after thirty (30) days from the date of the entry of this Order.

16. That this is a Final Order in this cause.

The record contains a transcript of the December 15, 2022 hearing. Since an issue on appeal concerns whether a binding agreement was announced at this hearing, we deem it appropriate to set out much of the discussion that took place:

THE COURT: So we have everybody here, right?

MR. BRANCH [counsel for respondents]: We do, Your Honor.

THE COURT: So then let the record reflect that all the represented parties have their counsel present:

MR. BRANCH: Your Honor, I'll try to be as exact as I can, but I don't have dates to all the orders, but this is basically the agreement that has been reached by the parties.

Number one, Exhibit B of the order in reference to distributions per stirpes, any right to appeal that order is waived by the parties.

MS. KAUFMAN [counsel for respondents]: Does Your Honor mind if I give him some more specifics on that?

THE COURT: No.

MR. BRANCH: The name of the order is the order on Hearing Held on October 27, 2022 to Determine the Schedule of Issue For Rev. Dr. Hillery W. Key Schedule of Distribution For the issue of Rev. Dr. Hillery W. Key and Request For Sanctions. The date that order was entered is December 15th, 2022, and the schedule is Exhibit B. Exhibit B.

The attorney fees as submitted, the parties have agreed to those attorney fees as submitted in each party's motion and will waive any right to appeal of those attorney's fees.

All distributees and heirs will supply the guardian ad litem with their Social Security number.

Any money or any monies or funds that were paid to America Nelson will come out of her share of distribution.

The $990.00 I believe that's left outstanding for Ms. Ziarko's attorney's fees --

MS. KAUFMAN: May I help?

THE COURT: Yes.

MS. KAUFMAN: $990.00 of the money that Elizabeth Ziarko was paid will be paid back to the common fund out of America Nelson's portion of the proceeds.

THE COURT: Okay.

MR. BRANCH: Okay. There's approximately $8,126 in the Hillery Key's farm account. That will be paid directly to the guardian ad litem for

fees and expenses connected with distribution of the funds of the -- from the proceeds of the sale of the property.

Hold on for one second. I'm trying to read my writing.

The clerk and master would have to distribute the funds to the clerk and master -- I'm sorry, to the guardian ad litem. All funds on deposit from the proceeds of the sale --

THE COURT: Will be paid to him?

MR. BRANCH: -- will be paid to the guardian ad litem.

THE COURT: Is that acceptable?

MS. GRAY: Repeat that again.

MR. BRANCH: All funds on deposit from the proceeds of the sale of the subject property will be paid to the guardian ad litem for him to distribute to the heirs.

MS. GRAY: Oh, okay.

MR. BRANCH: I thought you wouldn't have any objection to that.

(Overlapping speakers.)

MR. BOTTORFF [counsel for petitioners (Plaintiffs on appeal)]: It's the entire balance.

MR. BRANCH: It's the entire balance.

MS. KAUFMAN: It's the entire balance because it's more than just sale proceeds.

MR. BOTTORFF: Say that, the entire balance.

MR. BRANCH: The entire balance of funds now on deposit held by the clerk's office for the sale --

MR. BOTTORFF: No.

MR. BRANCH: Not from the sale, I'm sorry. The entire balance of funds held by the clerk's office will be paid to the guardian ad litem.

MS. KAUFMAN: And that will include money that's moved from America Nelson's portion back into the common fund. So any funds in the common fund.

MR. BOTTORFF: She's going to pay our checks?

THE COURT: I'm not trying to jump into y'all's agreement. But if she's giving all the funds to the guardian ad litem and he's going to make the checks, why wouldn't he pay the attorneys' fees out of it? Wouldn't that be easier?

MR. OWEN [guardian ad litem for unknown heirs]: I'd be willing to do that, Your Honor. One thing that we didn't discuss, are there any court costs due?

MS. GRAY: I don't think so.

MR. OWEN: If there are any court costs due, do we agree to pay that out of the common fund?

MR. BRANCH: Of the common fund, right.

MS. GRAY: We usually collect everything upfront.

MR. BRANCH: Okay. The court reporter fees for today will be paid from the funds -- will be paid from the common fund, and the transcript too, by the guardian ad litem.

The guardian ad litem will pay from the common fund fees for the court reporter.

THE COURT: The guardian ad litem is going to pay everything, right?

MR. BRANCH: Yes, that's what it looks like, the guardian ad litem is going to pay everything, right. Am I missing anything else?

MS. KAUFMAN: May I make two comments?

MR. BRANCH: Make any comments that you want.

MS. KAUFMAN: The agreement was that no party will appeal this case in any way. Everyone is waiving their right to appeal pursuant to the appeal-as-of-right rules under the Tennessee Rules of Civil Procedure.

And there was some discussion about the attorneys' fees and whether or not we would agree to say they were reasonable and necessary, and I don't agree to that. The language needs to be that this is a settlement agreement. Things were in dispute. Everybody is settling it. And the reason for that is -- just so the court understands -- if we put in the order that the attorney fees were reasonable and necessary and somebody who is unrepresented here today appeals, then we're stuck with basically -- we are stuck with basically a conclusion of law that you made when all we were doing was making a settlement agreement. Does that make sense?

THE COURT: I get it. So you don't have to editorialize at all.

MS. KAUFMAN: Exactly. I just wanted to make sure that it's on the record that we discussed that so we don't have to come back and argue about the order.

THE COURT: Okay.

***

THE COURT: Well, let me ask. Mr. Bottorff, is that the agreement as far as you know it?

MR. BOTTORFF: That's the agreement. Yes, it is.

THE COURT: Ms. Kaufman, is that the agreement as far as you know it?

MS. KAUFMAN: It is, Your Honor.

THE COURT: Mr. Owen, is there anything else, you think needs to be in the agreement to help you fulfill your duties and obligations?

-10-

MR. OWEN: I don't think so, Your Honor. We'll all cooperate, I think, and I think everybody is wanting to get their money to their clients.

THE COURT: I would think that's the biggest thing.

MR. OWEN: Yes, and that we all cooperate.

THE COURT: Pride and authorship should be the last thing if you're waiving the right to appeal and we already agree on the distribution and we agree on the attorneys' fees. I don't know what else there is to argue about.

MR. BOTTORFF: For Ms. Gray's purpose, if this is an agreed order and everybody has waived their rights to appeal, that order doesn't need to stay down 30 days before she can make the distribution; am I correct?

MR. OWEN: Your Honor, I'm not sure that we can do that.

MS. GRAY: I think I've got to hold it for 30 days because there are unrepresented people that could come back and file an appeal.

MS. KAUFMAN: It does have to wait, I think.

THE COURT: But if you've waited since 1998, I think you can wait 30 days.

MS. KAUFMAN: The only other issue, Your Honor, my client -- one of my clients is actually present in the courtroom, and the question was just asked of me is there a time set for distribution after the order becomes final after 30 days?

MR. OWEN: No, sir. I will --

MS. KAUFMAN: As soon as possible?

MR. OWEN: As soon as possible once the 30 days has run, Your Honor, we will start. And if you let me know -- when I look at this list, I don't know who is represented by who. If the attorneys will help me, we will get the money out even quicker.

MS. KAUFMAN: I will send you what you need.

MR. OWEN: Send me what I need, absolutely. I will accommodate those that we can absolutely pinpoint. And then some that maybe we don't have a good address for, we'll work on it if we can, Your Honor.

THE COURT: She will not be cutting a check until 30 days expires.

MR. BRANCH: Your Honor, I guess we'll be placing a certificate of service for all on this order for all heirs that we know of, which I think is everybody.

MR. OWEN: And I'll pay the expense of sending that to anyone that is unrepresented if y'all let me know who they are.

MS. KAUFMAN: Actually Mr. Monroe just raised an issue that I think we might want to put. Maybe it's the benefit of being young and not having a clouded brain yet.

When we decree in the order that the attorney fees are going to be paid out of the common fund, perhaps it should say and everybody bears that

-11-

expense, all heirs bear that expense on a pro rata share in equal proportion to their fractional interest, because that's how common funds work. That's how all the case law works unless anyone disagrees with me.

MR. BRANCH: I don't disagree.

MS. KAUFMAN: You pay it in your -- like my client, who takes 1/12th, would pay -- 1/12th of the attorney's fees would come from his portion. Somebody who takes 1/100th would pay 1/100th.

THE COURT: Any objection?

MR. BRANCH: None from me.

MR. BOTTORFF: (Shakes head negatively.).

MS. KAUFMAN: I just want to make it clear --

THE COURT: That's fine.

MS. KAUFMAN: -- to avoid an argument.

THE COURT: Okay. Who is drafting the order?

MR. BRANCH: I'll start on it, and I'll circulate it. I'm sure everyone would have some additions.

THE COURT: Okay.

MS. KAUFMAN: Thank you very much, Your Honor.

THE COURT: No, thank all of you.

Despite the agreement waiving the right to appeal, Plaintiffs have appealed to this Court.

## **Discussion**

There are two pending motions to dismiss. Murrell Defendants filed a motion to dismiss arguing failure to timely notify all parties of the notice of appeal; waiver of the right to appeal as a result of the agreement announced at the December 15, 2022 hearing; and failure to timely file a transcript. Hayes Defendants filed a motion to dismiss arguing that the appeal should be dismissed for failure to adhere to the requirements for appellate briefs, including insufficient citation and exceeding the word count.

Although not stated exactly as such, Plaintiffs raise the following issues on appeal: 1) whether Defendants' motions to dismiss should not be considered because the consent order is disputed by Plaintiffs and was only entered into by six of 64 interested family members; 2) whether the Trial Court erred by determining that the sale proceeds of the farm should be distributed to Dr. Key's descendants beginning with his three children on a per stirpes basis rather than to Dr. Key's thirty-two great-grandchildren per capita, and from there to the descendants per stirpes; and 3) whether attorney's fees should be awarded pursuant to the common fund doctrine. Hayes Defendants raise separate issues, which we restate and consolidate as follows: 1) whether Plaintiffs' appeal should be dismissed for noncompliance with the Tennessee Rules of Appellate Procedure; and 2) whether

-12-

Plaintiffs' appeal is frivolous.  Murrell Defendants also contend that this appeal is frivolous.

The issues on appeal present questions of law.  A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness.  *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether Plaintiffs' appeal should be dismissed for noncompliance with the Tennessee Rules of Appellate Procedure.  Hayes Defendants cite Plaintiffs' failure to properly cite authorities or the record; Plaintiffs' exceeding the word count limit; and various other deficiencies in Plaintiffs' brief that contravene Tenn. R. App. P. 27.  Hayes Defendants argue further that Plaintiffs were not properly substituted as parties for Vernon White.  Under Tenn. R. App. P. 2, this Court may for good cause "suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion . . .," although this does not permit extending the time for filing a notice of appeal as prescribed by rule.  None of the examples of noncompliance with the rules that Hayes Defendants cite implicate the timeliness of Plaintiffs' appeal.  Thus, the stated defects are not jurisdictional in nature.  Given that, as well as the fact that the issues are readily discernable, we elect to proceed and consider the substance of this appeal in an attempt to bring this case to an end.  Nevertheless, we caution parties to adhere to the Tennessee Rules of Appellate Procedure, as failure to do so can result in dismissal of one's appeal.

We now address the pending motions to dismiss filed by Defendants.  This issue overlaps with Plaintiffs' issue regarding the validity of the consent order.  Insofar as Defendants raise technical issues with Plaintiffs' brief or their appellate practice, we deny dismissal on that basis.  That leaves us to consider whether Plaintiffs have waived their right to appeal as a result of the agreement announced at the December 15, 2022 hearing below.  Tennessee caselaw reflects that, under certain circumstances, agreements announced in court may be binding on the parties.  This Court has explained:

> There is no novelty in holding parties bound by representations made in formal judicial proceedings.  For example, oral stipulations made in open court and accepted by the court are valid and will be enforced.  *See Bearman v. Camatsos*, 215 Tenn. 231, 235-36, 385 S.W.2d 91, 93 (Tenn. 1964); *Town of Surgoinsville v. Sandidge*, 866 S.W.2d 553, 555 (Tenn. Ct. App. 1993); *see also* Tenn. R. Civ. P. 39.01. This rule applies to stipulations regarding issues as well as stipulations of fact.  *See In the Matter of Property Seized On Or About November 14-15, 1989*, 501 N.W.2d at 485.  As a general rule, a stipulation made in the presence of a judge, but not in open court, must be reduced to writing to be effective.  *See* 83 C.J.S. *Stipulations* § 4(2) at 6.

-13-

A compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law. *See Sweeten v. Trade Envelopes*, 938 S.W.2d 383, 385 (Tenn. 1996). The Supreme Court recognized this distinction in *Harbour* [*v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987)], stating, "This is not to say that the compromise agreement may not be a binding contract, subject to being enforced as other contracts, but only that the court may not enter judgment based on the compromise agreement, when it has notice that one of the parties is no longer consenting to the agreement for whatever reason." *Harbour*, 732 S.W.2d at 599-600.

Where, however, the parties or the court seek to give a contractual arrangement between the parties the authority and remedies provided by a court's judgment, considerations other than, or additional to, the enforceability of the prior oral agreement come into play. Our Supreme Court has described the nature of a settlement agreement brought to the court for entry, finding "a consent judgment does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court." *Harbour*, 732 S.W.2d at 599. Thus, it is logical to conclude that an agreement must exist at the time the agreement is made a matter of record—whether that be by entry of consent judgment or by stipulation or agreement made in open court and on the record.

From all of the above, we conclude that Tennessee is one of those jurisdictions where:

> the terms of the settlement should be stated to the court and taken down by the reporter or otherwise reduced to writing so as to prevent a dispute as to what are the terms of the settlement, and that an oral stipulation for compromise and settlement made in open court in the presence of the parties and preserved in the record of the court is as binding as a written agreement.

15A C.J.S. *Compromise and Settlement* § 17 at 214-215 (citations omitted).

In the matter before us, Mahan does not dispute that an agreement existed at the close of the judicial settlement conference herein, but asserts that it withdrew its consent the next morning and before the consent order was presented to the settlement judge. Therefore, our task is to determine whether Mahan's agreement at the close of the settlement conference is the

type which should preclude Mahan from later withdrawal of assent. The appropriate inquiry is whether the agreement was made in open court, on the record, and its terms were duly recorded.

*Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539-40 (Tenn. Ct. App. 2000) (footnote omitted). We went on to conclude among other things in *Envtl. Abatement, Inc.* that Mahan's consent to the oral agreement was subject to withdrawal because "it was not made 'on the record' or 'in open court.'" *Id*. at 541 (footnote omitted).

Initially, we observe that Plaintiffs do not properly argue this issue in their brief. They state as follows:

> C. The pending Motion to Dismiss Appeal should not be considered by the Court since the "Consent Decree" is disputed and was entered into by only six of the sixty-four family members that have an interest in this case.
> (The Appellants' Response and Memorandum in Opposition to Appellees' Motion to Dismiss Appeal was filed on October 5, 2023, and is incorporated herein by reference.)

It is not proper to incorporate by reference in an appellate brief arguments made elsewhere. First, that would nullify the word limit. Second, opposing parties should not have to hunt down an argument in a separate document—the argument must be set out in the brief itself. Nevertheless, we proceed to consider Plaintiffs' argument. Plaintiffs have argued, essentially, that Plaintiffs' counsel was kept out of the loop in the preparation of the consent decree. Plaintiffs contend that there were still additional terms to negotiate, that no final agreement was reached, and that the consent order is not binding on unrepresented parties. Finally, Plaintiffs note that their lawyer did not sign the consent order.

To determine whether Plaintiffs' argument has merit, we look to the transcript of the December 15, 2022 hearing. After the terms of the agreement were recited, the Trial Court asked Plaintiffs' counsel whether that was "the agreement as far as you know it?" Plaintiffs' counsel replied: "That's the agreement. Yes, it is." An agreement on outstanding issues was thus announced in open court, on the record, with the terms duly recorded. Notably, one of the terms was that the parties waived their right to appeal. Plaintiffs' counsel agreed. There was no ambiguity. Plaintiffs may not repudiate the agreement now by pointing to hypothetical additional terms, or the fact that there were unrepresented parties. The agreement speaks for itself. We hold that the agreement announced by the parties on the record in open court was a binding agreement, including the provision whereby the parties expressly waived their right to appeal. While this ends

-15-

the matter, for completeness' sake in this long-running case, we proceed to address Plaintiffs' remaining issues.[2]

We next address whether the Trial Court erred by determining that the sale proceeds of the farm should be distributed to Dr. Key's descendants beginning with his three children on a per stirpes basis rather than to Dr. Key's thirty-two great-grandchildren per capita, and from there to the descendants per stirpes. Defendants argue that, since this Court decided upon a per stirpes distribution of Dr. Key's estate in 2005, the law of the case doctrine prevents Plaintiffs from relitigating that issue. The Tennessee Supreme Court has discussed the law of the case doctrine as follows:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 Am.Jur.2d *Appellate Review* § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. App. 1996). The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. *Ladd*, 939 S.W.2d at 90 (citing other authority). The doctrine does not apply to dicta. *Ridley v. Haiman*, 164 Tenn. 239, 248-49, 47 S.W.2d 750, 752-53 (1932); *Ladd*, 939 S.W.2d at 90.

> \*\*\*

> There are limited circumstances which may justify reconsideration of an issue which was [an] issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

*Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998).

---

[2] Given the outcome, Defendants' motions to dismiss are moot.

Plaintiffs argue that we should revisit our 2005 opinion. To determine whether we should do so, we consider whether any exceptions to the law of the case doctrine apply to this case. First, we find no new evidence in the record that would warrant revisiting our prior opinion. Second, in our prior opinion, now-Chief Justice Kirby applied the relevant law and found that a per stirpes distribution was the testator's intent. Her well-reasoned opinion was not "clearly erroneous." Furthermore, Plaintiffs have failed to show how a per stirpes as opposed to a per capita distribution would create a "manifest injustice" if allowed to stand. Third, there has been no change in the controlling law that would warrant revisiting our prior opinion. In 2005, this Court decided the method by which Dr. Key's estate would be distributed—it is the law of the case. No exceptions to the law of the case doctrine apply. We decline to revisit our prior opinion.

In their reply brief, Plaintiffs argue for the first time that our 2005 opinion cannot be the law of the case because we lacked subject matter jurisdiction. Plaintiffs cite the Tennessee Supreme Court in *Leaver v. McBride*, 506 S.W.2d 141, 142 (Tenn. 1974), which stated that "[t]here were no disputed facts and the only question involved was the construction of the will of Lydia Freeman Kerr. It results, therefore, that the appeal should have been directly to this Court pursuant to T.C.A. § 16—408." According to Plaintiffs, jurisdiction in this case was in the Tennessee Supreme Court, not the Tennessee Court of Appeals. However, the 1974 *Leaver* case cited by Plaintiffs refers to long-defunct statutory language.[3] As Hayes Defendants point out, the old statute, Tenn. Code Ann. § 16-408, provided that the jurisdiction of the Court of Appeals extended to all civil cases excepting, as relevant, "cases which have been finally determined in the lower court on demurrer or other method not involving a review or determination of the facts, or in which all the facts have been stipulated." The statute's modern successor, Tenn. Code Ann. § 16-4-108, provides that "[t]he jurisdiction of the court of appeals is appellate only, and extends to all civil cases except workers' compensation cases and appeals pursuant to § 37-10-304(g) [concerning parental consent]." Tenn. Code Ann. § 16-4-108(a)(1). By the time we issued our 2005 opinion in this matter, the statute referred to in *Leaver* had changed. Indeed, we had been using the new statute for some time. *See McElhaney v. Barnwell*, No. E2000-02748-COA-R3-CV, 2002 WL 43593, at *2 n.4 (Tenn. Ct. App. Jan. 14, 2002), *no appl. perm. appeal filed* (quoting the modern language of Tenn. Code Ann. § 16-4-108). Plaintiffs' challenge to our subject matter jurisdiction in the 2005 *White v. Hayes* opinion is without merit.[4]

The next and final of Plaintiffs' issues is whether attorney's fees should be awarded pursuant to the common fund doctrine. Plaintiffs' argument on this issue consists of a

---

[3] Hayes Defendants asked for and received permission from this Court to file a supplemental brief in response to Plaintiffs' late-raised subject matter jurisdiction challenge.

[4] We observe further that the Tennessee Supreme Court denied Vernon White's application for permission to appeal in the 2005 case.

-17-

single line: "The Motion for attorney fees is still pending before the Trial Court." However, based on this record, that statement is inaccurate. The issue of attorney's fees was settled below. We affirm the judgment of the Trial Court in its entirety. Defendants' motions to dismiss are denied as moot.

The final issue we address is whether this appeal is frivolous. Tenn. Code Ann. § 27-1-122 provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A successful party should not be forced to bear the costs and vexation of a baseless appeal, nor should appellate courts be saddled with such appeals. *See Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). However, the courts must take care not to discourage legitimate appeals and should only impose a penalty pursuant to Tenn. Code Ann. § 27-1-122 in rare and obvious cases of frivolity. *Id*. Whether to award damages due to a frivolous appeal is a discretionary decision by the appellate court. *Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003).

Plaintiffs appealed despite the binding agreement announced in court whereby the parties waived their right to appeal. In addition, Plaintiffs sought to relitigate the distribution of Dr. Key's estate years after that issue was decided conclusively by this Court. We find this appeal frivolous and, in the exercise of our discretion, remand for the Trial Court to award Defendants reasonable attorney's fees and expenses under Tenn. Code Ann. § 27-1-122, to be paid by Plaintiffs rather than from the common fund in this case.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellants, Marilyn Locke and Odessa Rose, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE